MODISETT, *Appellant*, v. MCPIKE.

1.  **Husband and Wife**: DIFFERENCE BETWEEN: INTERVENTION OF THIRD PARTY.    Although a wife may have just cause for separation or divorce from her husband, and she may separate, or obtain a divorce from him, assigning such cause as the ground thereof, yet if she would not have sought the separation, or sued for the divorce, but for the intentional and unsolicited interference of a third person inducing her so to act, such separation or divorce, or just cause therefor, does not· of itself constitute any defense to an action by the husband against such person for the loss of his wife's society, assistance and affection.    It would be otherwise if the wife having such just cause should voluntarily seek the advice, shelter and protection of a third person, and he should give her his advice and protection in good faith and from motives of kindness and humanity.

2.  **Instructions.**    Although correct instructions may be given in behalf of one party, a judgment against him will be reversed, if erroneous instructions on a material issue in the cause and inconsistent therewith are also given in behalf of ·the other.

3.  **Husband and Wife**: EVIDENCE.    In an action by a husband for the alienation of his wife's affections by defendant, thereby inducing her to separate from him and to sue for and obtain a divorce, evidence of the connection between defendant's conduct toward plaintiff's wife and defendant's troubles with his own wife, if any, would be competent as pertaining to the material inquiry, whether such conduct was actuated by good or improper motives.

*Appeal from Montgomery Circuit Court.*—HON. G. PORTER,
                              Judge.

REVERSED.

*Ed. T. Smith* for appellant.

Evidence of all the circumstances bearing on the case should have been admitted. 2 Greenl. Ev., (10 Ed.) §§ 41, 42. Strangers should leave the husband and wife to their legal remedies against one another.; a somewhat milder rule obtains as to parents. Schouler's Dom. Rel., pp. 57, 58; *Bennett v. Smith*, 21 Barb. 439; *Barnes v. Allen*, 30 Barb. 663. The instructions given for plaintiff and defendant are inconsistent with each other. *Thomas v. Babb*, 45 Mo. 384; *Henschen v. O'Bannon*, 56 Mo. 289.

*W. H. Biggs* for respondent.

The answer to the question asked witness B. H. Mc-Pike would have been irrelevant and incompetent, and was calculated to prejudice and mislead the jury. The plaintiff's instructions enunciate the correct doctrine. The gist of an action by the husband for enticing away his wife, is the loss, without justifiable cause, of the wife's society and services. Plaintiff to recover in this action must establish : 1st, That the separation was not occasioned by the voluntary act of the wife upon justifiable cause; 2nd, That the separation was brought about by defendant, and without any fault on plaintiff's part. It is neither unlawful nor improper for a wife to abandon the husband who treats her cruelly, or by his conduct renders her condition intolerable; and in such a case any one may lawfully harbor or otherwise aid and counsel her. She has the right to ask and receive protection and advice from others against the oppression of the husband. Such aid or counsel is not against the lawful-rights of the husband. He has forfeited all of his rights under the law by his misconduct. *Philp v. Squire*, 1 Peake N. P. p. 114; *Schuneman v. Palmer*, 4 Barb. 225; *Winsmore v. Greenbank*, 1 Willes, 577; *Turner v. Estes*, 3 Mass. 317; *Hood v. Peck*, 56 Barb. 202; *Barnes v. Allen*, 1 Keyes (N. Y.) 390; 1 Abbott

N. Y. Ct. App. 111; 30 Barb. 663; *Campbell v. Carter*, 3 Daly (N. Y.) 165 ; 2 Hilliard on Torts, (3 Ed.) p. 510.

RAY, J.—This is a suit instituted by Morton M. Modisett against Aaron McPike for wrongfully and unlawfully poisoning the mind of plaintiff's wife against him, and alienating her love and affection from him, by which she was persuaded to separate from him and sever the relation of husband and wife. Defendant filed his answer, denying the material allegations in plaintiff's petition, and alleging further, that plaintiff was jealous and passionate, and unkind to his wife; and that during three or four years prior to the separation he became an habitual drunkard; and that he became so beastly in his habits, and so violent and unkind to his wife that she was compelled, from self-respect and for self-protection, to separate from plaintiff; and that the separation and suit for divorce were caused by no act or word of defendant; but that all of plaintiff's domestic troubles were brought about by the misconduct of the plaintiff himself. To this answer plaintiff filed a reply denying the allegations of the answer. The cause was tried at the June adjourned term, 1877, of the Montgomery circuit court, where it had been taken by a change of venue from the Pike county circuit court.

At the trial the plaintiff testified in his own behalf, and also offered the testimony of several other witnesses in support of his cause of action, and then offered Benjamin H. McPike as a witness, who testified as follows: I am the defendant's brother; I had a conversation with him about three years ago in July. This question was then asked the witness : " State what conversation, if any, you had in July, 1874, with the defendant in regard to his conduct with Mrs. Modisett, and what connection it had with his troubles with his own wife." Defendant's attorneys objected to the question, because it was irrelevant to the issue in the case, which objection was, by the court, sustained. Plaintiff excepted to the ruling of the court and

saved his exception. Plaintiff's attorneys then offered to show by the witness that the defendant and his wife separated in the year 1874, and that the separation was caused by the defendant's intimacy with Mrs. Modisett; that the defendant always treated his own wife kindly and affectionately until the beginning of the year 1873; and that he then treated her with coldness. and indifference; that in July, 1874, defendant's wife begged him to treat her as he had formerly done, and requested him to quit his visits to Mrs. Modisett; but defendant refused to listen to her entreaties, and offered her $4,000 to leave him and take a divorce. Defendant, by his attorneys, objected to the introduction of this testimony, on the ground that it was irrelevant, and the court sustained the objection. Plaintiff, by his attorneys, excepted to the ruling of the court and saved his exceptions. The defendant also testified in his own behalf, and offered the testimony of other witnesses in support of his defense.

At the close of the evidence the court gave the following instructions for the plaintiff:

1. The husband is entitled to the society, comfort and assistance of his wife. The law gives a right of action to the husband against any person who entices or persuades her to separate, or remain apart from him; and if the jury believe from the evidence in the cause that the defendant, as charged in plaintiff's petition, intentionally persuaded or induced plaintiff's wife to separate from him, and sever the relation of husband and wife, or remain apart from him, then the jury will find a verdict for plaintiff.

2. In order to entitle plaintiff to maintain this action, it is not necessary that he should prove, by the evidence in the cause, that defendant directly requested plaintiff's wife to leave him, or to remain apart from him, or to institute a suit for a divorce against him; but if the jury believe from the evidence in the cause that defendant was intentionally guilty of such conduct as was calculated to prejudice plaintiff's wife against him, and to alienate her from him,

and to induce her to leave him, to remain apart from him, and to procure a divorce; and that such effect was intended by defendant to be produced, and was actually produced by his conduct, then the jury should find a verdict for the plaintiff.

3    Plaintiff is not required to prove that defendant enticed and persuaded his wife away from him by direct and positive testimony; but these facts may be proven by circumstantial evidence; and it is the duty of the jury, in passing on these questions to take into consideration all the facts and circumstances given in evidence in the cause; and if, from all the evidence the jury believe that defendant intentionally persuaded plaintiff's wife to separate and remain apart from him, then it will be the duty of the jury to find a verdict for the plaintiff.

4.    If the jury believe from the evidence in the cause that defendant intentionally prejudiced plaintiff's wife against him, and caused her to leave him and remain apart from him, and institute a divorce suit against him, as charged in plaintiff's petition; and that aside from defendant's said conduct and influence she would not have left him, or remained apart from him, or instituted a suit for divorce against him; then, and in that event, although the jury may believe from the evidence that plaintiff was addicted to the use of ardent spirits, or had even become an habitual drunkard, yet the verdict should be for the plaintiff.

5.    Although the jury may believe from the evidence that plaintiff was addicted to the use of ardent spirits, or had even become an habitual drunkard; yet this did not justify defendant in interfering in his domestic affairs, and does not constitute any defense to this suit, unless the jury further believe from the evidence that plaintiff's wife left him and sued him for a divorce on account of such misconduct on his part, and independently of, and not on account of the conduct and influence of defendant.

6.    Although the jury may believe from the evidence that plaintiff's wife obtained a divorce from him, and that

she made plaintiff's conduct grounds for obtaining said divorce ; yet if the jury further believe from the evidence that, notwithstanding such misconduct on the part of plaintiff, his wife still would not have separated and remained apart from him, and sued him for a divorce, if it had not been for the acts and conduct and influence of defendant toward her ; and that defendant purposely and intentionally, by such acts, conduct and influence, induced her to so separate and remain apart from plaintiff, and sue him for a divorce; then the fact that plaintiff's said wife obtained such divorce, on account of plaintiff's misconduct, does not, of itself, constitute any defense to this suit.

7.   If the jury find for the plaintiff, they will assess his damages at any sum they may deem just, not exceeding the sum claimed in the petition, to-wit : $10,000 ; and in estimating his damages, they may take into consideration the injury sustained by him in the loss of the comfort, society and services of his wife, and the wrong and injury done to his own feelings, character and condition, and they may also allow such sum by way of smart money, as they may consider the defendant, from the evidence in the cause, by his conduct deserves, not exceeding in all, said sum of $10,000.

The court then gave the following instructions at the instance of the defendant :

1.   It devolves on the plaintiff to show, by a preponderance of the testimony, to the satisfaction of the jury, that the defendant induced, and persuaded the plaintiff's wife to separate and live apart from him, or that he persuaded, or induced her to sue him for a divorce ; and unless the plaintiff has shown this to be true, by a preponderance of proof, then the verdict of the jury should be for the defendant.

2.   If the jury believe from the evidence in the cause that plaintiff's wife was induced to separate from him, and sue him for a divorce, on account of plaintiff's intemperance, or on account of mistreatment, or abuse on the part

of plaintiff toward her, and not on account of anything defendant may have said or done, then the verdict of the jury should be for defendant.

3.   If the jury find from the evidence that the plaintiff was addicted to habitual drunkenness, for the space of one year next before the separation of plaintiff and his wife, or the institution of her suit for a divorce against the plaintiff, then the wife of plaintiff had a just cause for said separation and for the institution of said suit for a divorce, and the verdict of the jury should be for defendant, regardless of whether defendant, or any one else, advised her to do so or not.

4.   If the jury believe from the evidence that prior to the separation of plaintiff and his wife, and prior to the institution of the suit for divorce by her against the plaintiff, said plaintiff abused his said wife, and offered her such indignities by acts and gestures, or by slanderous epithets, as to render her condition intolerable, then the plaintiff's said wife had a right to separate from plaintiff, and to sue him for a divorce, and the verdict should be for defendant, without regard to whether defendant, or any one else, advised her to do so or not.

The following instructions were given by the court of its own motion:

1.   The jury are the proper and peculiar judges of the credibility of witnesses, and the weight of the evidence produced in this cause.

2.   Every material fact at issue in the case must be by the jury determined, (after a due consideration of the testimony bearing upon the same, and the law, as declared by the court, in the written instructions given to them,) either in favor of the plaintiff or the defendant, according as the evidence preponderates in favor of the one party or the other, and a verdict should be rendered in favor of the one party or the other, upon the same principles above enunciated.

3.   Unless, upon the whole evidence thus only weighed

and considered, there be, in the estimation of the jury, a greater weight of evidence in favor of the plaintiff, the verdict should be in favor of the defendant.

The jury returned a verdict for the defendant, and the court gave judgment accordingly; whereupon the plaintiff, after an unsuccessful motion for a new trial, brings the cause here by appeal.

So far as we now remember, the precise question involved in the case has never been directly before this court. For the better understanding of the case, therefore, it may be well to add a somewhat fuller statement. It appears, from the evidence given at the trial, that the plaintiff and wife were married in 1855, and lived together until sometime of the winter of 1872–73, when a separation took place; and that sometime thereafter the wife commenced proceedings for a divorce from her husband, and in 1876 obtained a decree to that effect. In further explanation, it is sufficient to say, that the testimony of plaintiff and that of his witnesses, tended to show that the plaintiff and wife lived pleasantly together until a short time prior to the separation; that prior to that the relations between the plaintiff and defendant had been friendly, intimate and of a confidential character; that plaintiff, sometime before that, became embarrassed, financially, and gave defendant a deed of trust on his lands to secure some indebtedness, and also gave him a power of attorney to transact and settle up his business; that a short time before the separation the plaintiff had given the defendant a deed for some of his property, which the defendant was to convey to plaintiff's wife and children; that after plaintiff learned that his wife was going to leave him, he went to defendant and told him not to make the deed to his wife until he saw him again; and that defendant said he would not; that some eight or ten days thereafter the defendant, in his presence, and without his consent, and against his wishes, delivered the deed to plaintiff's wife; that about the same time defendant threatened to close out said deed of trust,

and thereby constrained the plaintiff to make a bill of sale of his personal property to his wife, in order to prevent said sale. It also appears that after the separation, the plaintiff's wife lived in a house belonging to the defendant; and that defendant had traded for the house that she might have it to live in. One of plaintiff's witnesses says that the defendant bought the house in the fall of 1873, and told him that he preferred having "Mary" (plaintiff's wife) in his house so that plaintiff would not have the right to go there. This witness also said that at one time defendant came into the house and kissed Fannie, his daughter, and said to Mrs. Modisett, "I will kiss you if you don't look out," and attempted to catch hold of her, but she stepped out of the way with the remark, "You had better look out, sir." The evidence of plaintiff also tended to show, while plaintiff's wife was living in this house, that the defendant often came to Mrs. Modisett's, and sometimes stopped there; that he stopped there during court; that he sometimes came on the evening train and sometimes on the three o'clock morning train; that the defendant had been heard to speak of the plaintiff in the presence of Mrs. Modisett and the children as "old scamp," "old M. M." One of plaintiff's witnesses said that the defendant told him that he had given Mrs. Modisett a cow, and did not know how much he had given her. There was some evidence, also, about his giving her a dress pattern.

On the other hand, the defendant introduced the decree divorcing plaintiff and his wife, rendered in 1876. The defendant then testified in his own behalf, and among other things said that he had known plaintiff ever since 1860 or 1861; that he and plaintiff had been on friendly and intimate terms; that he had visited Louisiana frequently and went to plaintiff's house at his solicitation; that plaintiff made him a deed for some land about the 1st day of January, 1873, and that he was to deed it back to plaintiff's wife and children, and that he afterward

did so; but he denied that he forced plaintiff to make the bill of sale to his wife. "I don't recollect saying that I would close out the deed of trust. I had nothing to do with the separation. I did not know they had separated until two or three months after the separation took place. Plaintiff went to southeast Missouri, and remained for about a month or longer, and when he came back he told me that he and his wife had separated. That was the first I heard of it. I never encouraged the separation. I never had an intimation that they intended to separate until plaintiff told me. My son and daughter boarded at Mrs. Modisett's. They boarded there about ten months. Mrs. Modisett lived in a house belonging to me. She paid me $15 per month as rent. She has paid three years' rent and owes one year's rent now. She moved in the house in October, 1873. I traded for the house that Mrs. Modisett might have it to live in; she still lives there."

The defendant also introduced witnesses whose evidence tends to show that the plaintiff and wife had not lived happily together for some years prior to the separation; that plaintiff had abused and maltreated his wife in various ways and on various times and occasions, and had frequently declared to various persons that he found out a few weeks after his marriage that his wife never loved him, and that for the last twelve years he had been the most miserable man in Pike county. Defendant also offered a number of witnesses whose evidence tends to show that the plaintiff had on various occasions been seen beastly drunk, and had become a habitual and abandoned drunkard.

It is insisted by the appellant that the trial court erred in giving the third and fourth instructions on the part of the defendant; and also in excluding the proposed testimony of Benj. H. McPike, as above set out.

It is admitted on all hands, and we think justly, that the law of this case is correctly declared by the court in

1 HUSBAND AND WIFE; differer.ce between: intei- vention of third party.

the instructions given on the part of plaintiff. The fourth, fifth and sixth instructions for plaintiff announce with special clearness and force the true doctrine applicable to the facts of the case and all other cases, when the same question arises. They declare the general doctrine that although the jury may believe that plaintiff's wife obtained a divorce from him, and that she made plaintiff's misconduct ground for obtaining said divorce, yet if the jury believe that notwithstanding such misconduct on the part of the plaintiff, his wife would not have separated or remained apart from him, or sued him for a divorce if it had not been for the acts, conduct and influence of defendant toward her; and that defendant purposely and intentionally, by such acts, conduct and influence, induced her to so separate or remain apart from plaintiff, or sue him for a divorce; then, the fact that plaintiff's wife obtained such a divorce on account of plaintiff's misconduct, does not, of itself, constitute any defense to this suit.

That doctrine is not the doctrine announced in the third and fourth instructions given for the defendant. They assert another and a different doctrine, and we think an erroneous one. In effect, they declare, as matter of law, that if the plaintiff was addicted to habitual drunkenness for the space of one year next before the separation of the plaintiff and his wife, or the institution of her said suit for a divorce against the plaintiff, the wife of plaintiff had a just cause for said separation and for the institution of said suit for a divorce, and that the verdict should be for the defendant regardless of whether the defendant, or any one else, advised ner to do so or not.

The first proposition contained in the above instruction may be, and doubtless is, correct, but the second is by no means true. The wife may have a just cause for separation or divorce, but she may elect to abide by her situation, and remain with her husband nevertheless. If she chooses to do so, no stranger has the right to intermeddle

with the domestic and marital relations of husband and wife, and if he voluntarily does so he is amenable for the consequences. If, on the contrary, the wife, having just cause for the separation, or for obtaining a divorce from her husband, voluntarily seeks the advice, shelter and protection of a relative, or even a stranger, then a different rule obtains. In such a case the wife has the unquestioned right to seek and accept the advice and protection of a relative or stranger from the intolerable abuse and wrongs of her husband. And in such case, also, such relative or stranger so affording such protection or advice to the wife, is not answerable to the husband for such conduct, if he acts in good faith and from motives of kindness and humanity. No one unasked, especially a stranger, has the right to volunteer his advice or protection, and if he does so he is amenable. "It is one thing to actively promote domestic discord, but quite another to harbor from motives of kindness and humanity, one who seeks shelter from the oppression of her own lawful protector.' It has been well said that "such conduct, whatever the motives, is exceedingly perilous on the part of a stranger, generally open to misconstruction, and never to be encouraged. They should leave the parties to their legal remedies against each other. With parents it is different." "A father's house," says Chancellor Kent, "is always open to his children; and whether they be married or unmarried, it is still to them a refuge from evil and a consolation in distress. Natural affection establishes and consecrates this asylum." See Schouler's Domestic Relations, pp. 57, 58. In the case of *Bennett v. Smith*, 21 Barb. 439, the correct doctrine is laid down. It is there held that: "It is well settled that a husband may maintain an action for enticing away his wife, or inducing her to live apart from him, and this, whether the wrongdoer be the father of the wife or any other person. But merely allowing the wife to come and remain in his house, by a stranger, and much less, her father, from good motives, will not give the husband a right of action.

Something further tending to prevent or dissuade the wife from living with her husband is requisite."

The third and fourth instructions for defendant are manifestly inconsistent with the fourth, fifth and sixth instructions given for plaintiff, and are not the law. "Each instruction must be correct in itself; all must be consistent with each other, and the whole taken together must present but one doctrine." *Thomas v. Babb*, 45. Mo. 384; *Henschen v. O'Bannon*, 56 Mo. 289.

2. INSTRUCTIONS.

As to the question asked the witness, Benj. H. McPike, there certainly can be no valid objection to the first branch of that question. As to the second branch there may be some question. As a general proposition, in ordinary cases the testimony must be confined to the issues made by the pleadings, and cannot be allowed to extend to other issues entirely collateral. But where, as in this case, it becomes material to know whether the conduct of defendant has been actuated by good or selfish and improper motives, a wider range is frequently permissible. In such cases, any fact or circumstance calculated to throw light upon the character and nature of the motives of the defendant, in his conduct in the premises, we think may fairly be looked into and considered. 2 Greenleaf on Ev., §§ 41, 42. For that purpose we think the question and proposed evidence offered might well have been permitted and allowed.

3. HUSBAND AND WIFE: evidence.

For the reasons above, the judgment is reversed and the cause remanded. All the judges concur.