## HARTPENCE v. ROGERS, *Appellant.*

### Division One, April 20, 1898.*

143  623
147  404
143  623
85a  210
143  623
98a  571
98a¹²572
143  623
101a  ⁶162
101a  ³42S
102a  22S

1. **Alienation of Wife's Affection:** EVIDENCE: CONCLUSION OF WITNESS. Plaintiff, in a suit against defendant for damages for alienating his wife's affections, was asked *why* he left defendant's farm. To which he replied: "He gained the affections of my wife and she was no more a wife to me." This answer is held not improper, as a conclusion of the witness, but a legitimate response to that question.

2. ————: INSTRUCTIONS: PRIMA FACIE CASE. In an action for damages against a stranger for alienating his wife's affections, the husband makes out a *prima facie* case when he shows that such stranger voluntarily and unasked intermeddled with his domestic affairs, and intentionally urged, persuaded and induced his wife to desert and abandon him, and in the absence of anything in the evidence to justify or excuse such conduct, the plaintiff is entitled to recover upon proof of such facts.

3. ————: ————: REFERENCE TO THE PETITION. An instruction, after setting out all the facts necessary to entitle plaintiff to recover, added the words "as stated in the petition." *Held,* not to be error, as referring the jury to the petition to ascertain the issues.

4. ————: ————: "SEVERING MARRIAGE RELATION." An instruction spoke of defendant's conduct as having caused the wife to "sever the marriage relation." *Held,* that the words could be readily understood by the jury to refer to the actual severing of the relation of husband and wife, and not to the legal separation by divorce, and hence were not error.

5. ————: ————: INTENTION. An instruction as to the intention of defendant's conduct towards plaintiff's wife and the natural effect intended and resulting therefrom, in the way of alienating her affections, in every way identical with an instruction approved in *Modisett v. McPike,* 74 Mo. 636, is held not error under the facts of this case.

6. ————: ————: PRACTICE: SWEARING FALSELY TO A MATERIAL FACT. While an instruction, telling the jury that if they find that any witness has willfully sworn falsely to any material fact that they may disregard the whole of the testimony of such witness, can not properly be given simply because of a mere difference in the evidence of

---

* NOTE.—Decided March 8, 1898, and rehearing denied April 20, 1898.

witnesses, yet when there is a material conflict in the testimony and the trial judge gives such instruction, it will not be reversible error. And where such instruction is properly given it may properly end in these words: "And in passing upon the credibility of a witness the jury are at liberty to take into consideration his manner upon the witness stand; the interest he may manifest, if any, in the case; and the reasonableness or unreasonableness of his testimony, as compared with the other testimony in the case."

7. ———: WITNESS: INTEREST IN THE RESULT. The jury, in determining the credit to be given a witness, may consider his interest in the case. And if a witness shows a prejudice against one litigant, or manifests an interest in having the suit result favorably to the other, the jury may consider such fact in determining the weight to be given to the testimony of such witness.

8. ———: ELEMENTS OF DAMAGE. An instruction telling the jury what things they may take into consideration in estimating plaintiff's damages, in a suit for alienating his wife's affections, is set out in the opinion and approved.

9. ———: INJURY TO HUSBAND'S CHARACTER. In a suit for damages by the husband against defendant for alienating his wife's affections, the disgrace and dishonor cast upon him may properly be considered by the jury in assessing the damages.

10. ———: EXEMPLARY DAMAGES. Exemplary or punitive damages, or smart money, can not be given for an ordinary tort, in the absence of proof of malice or wantonness. Nor is it proper to assume in an instruction the existence of facts which the jury are to find. Yet the giving of an instruction, directing the award of smart money and assuming the existence of facts which establish wantonness or malice or both, is not error "materially affecting the merits of the action," if the evidence on one side shows such facts to exist, and their existence is not denied by the other.

11. ———: EVIDENCE OF SEDUCTION. In this case it is held the court properly refused an instruction that there was no evidence of seduction or criminal intimacy by defendant with plaintiff's wife.

12. ———: EXCESSIVE DAMAGES. It is held that a verdict for $5,250 is not excessive damages, under the circumstances of this case, for the alienation by defendant of the affections of plaintiff's wife.

13. ———: ———: MATTER FOR JURY. The amount of damages in such cases is a question peculiarly within the province of the jury; and their award will stand unless there is proof of a flagrant abuse of their powers.

*Appeal from Caldwell Circuit Court.*—HON. E J.
BROADDUS, Judge.

AFFIRMED.

*Crosby Johnson* for appellant.

(1)  To constitute a tort there must be a conjunction of damage and wrong, and there is no tort if either damage or wrong is wanting. Cooley on Torts [1 Ed.], 62. (2)  The cause of action submitted to the jury involved no element of wrongfulness. To make the enticement of the wife from her husband actionable it must have been done from malice or with improper motives. *Rhinehart v. Bills*, 82 Mo. 534; *Gilchrist v. Bale*, 34 Am. Dec. 469. (3)  The plaintiff was allowed to recover on a different cause of action than that stated in his petition. *Reed v. Bott*, 100 Mo. 62; *Ross v. Ross*, 81 Mo. 84. (4)  There is no presumption of law that one advising a wife to leave her husband acts wrongfully in so advising. *State v. Bank*, 120 Mo. 161; *Page v. Dixon*, 50 Mo. 43; *Klein v. Landman*, 29 Mo. 259. (5)  The instruction in relation to the credibility of witnesses should not have been given since there was no material conflict of evidence. *Henry v. Railroad*, 109 Mo. 489; *Miller v. Car Co.*, 130 Mo. 517. (6)  An instruction which invades the province of the jury without furnishing aid, or which prescribes a false standard for their guidance, is fatally erroneous. *Purdy v. People*, 140 Ill. 46; *Louisville v. Whitehead*, 42 Am. St. 472; *State v. Anderson*, 19 Mo. 241; *State v. Patrick*, 107 Mo. 147; *Ashland v. Railroad*, 57 Mo. App. 148. (7)  Instructions calling the attention of jury to veracity of witnesses are not favored. *Bank v. Murdock*, 62 Mo. 74; *White v. Lewenberger*, 55 Mo.

App. 69. (8) If one party calls the other as a witness he vouches for his credibility. *Claflin v. Dodson*, 111 Mo. 195; *Bensberg v. Harris*, 46 Mo. App. 404. (9) The damages be awarded must be such as naturally flow from the wrong complained of. *Nicholson v. Rogers*, 129 Mo. 136. (10) To justify exemplary damages the act complained of must not only be unlawful, but it must also be malicious, wanton or oppressive. *Nicholson v. Rogers*, 129 Mo. 136; *State v. Jungling*, 116 Mo. 162; *Nelson v. Wallace*, 48 Mo. App. 193. (11) The measure of damages for unlawfully enticing the plaintiff's wife away would be the value of her services and society burdened by his obligation to support, clothe and care for her. Sutherland on Dam., sec. 1285; *Rudd v. Rounds*, 64 Vt. 432; *Davenport v. Hannibal*, 108 Mo. 471; *Furnish v. Railroad*, 102 Mo. 669.

*O. J. Chapman* for respondent.

(1) A series of instructions, embracing all the issues of the cause, is not objectionable, and the failure to embrace the issues in one instruction in such case is not error, if, as a whole, they are correct. *Mulhousen v. Railroad*, 91 Mo. 332; *Kalse v. Railroad*, 55 Mo. 473. (2) Actual estrangement and alienation of the affections constitute the essence of the offense. *Rhinehart v. Bills*, 82 Mo. 534. (3) Appellant can not complain of instructions which are in harmony with those asked by himself, even though erroneous. *Fenwick v. Bowling*, 50 Mo. App. 516; *Aultman v. Smith*, 52 Mo. App. 351; *Harrington v. Sedalia*, 98 Mo. 583. (4) The husband may sue for loss of affections. Cooley on Torts, 224; *Hoard v. Peck*, 56 Barb. 202; *Heermance v. James*, 47 Barb. 120. (5) The injury to plaintiff consists in the alienation of his wife's affections, with malice or improper motives. Debauchery and elope-

ment, when they occur, are only the immediate and legitimate consequences of the wrong. *Rhinehart v. Bills*, 82 Mo. 534. (6) The husband may bring an action on the case for damage against whomsoever persuades or entices his wife to live separate from him without sufficient cause. *Higham v. Vanasdol*, 101 Ind. 160; 3 Black. Com. 139; *Michael v. Dunkle*, 84 Ind. 544; *Perry v. Lovejoy*, 49 Mich. 529; *Holtz v. Dick*, 42 Ohio St. 23. (7) Letters written between plaintiff's wife and defendant are competent to show criminal intimacy between them and also to show alienation of the wife's affections. *Dalton v. Duegge*, 58 N. H. 57. (8) Where the judgment is manifestly for the right party, it should be affirmed, though there may be error in some of the instructions, and although some illegal evidence may have crept into the case. *Williams v. Mitchell*, 112 Mo. 300; *Wolfe v. Dyer*, 95 Mo. 545. (9) Where an instruction states the issues and states them "as stated in the petition," it is not erroneous. *Britton v. St. Louis*, 120 Mo. 437; *State v. Scott*, 109 Mo. 226. (10) This action differs only in degree from an action for criminal conversation with the wife. In each case it is alienating the affections from her husband and destroying the comfort he enjoyed in her society. *Heermance v. James*, 47 Barb. 120. (11) Plaintiff's instructions 1, 3 and 4 that defendant complains of are but counterparts of his own instructions 1 and 2, and he can not be heard to complain of error adopted by the trial court at his request. *Price v. Breckenridge*, 92 Mo. 378; *Holmes v. Braidwood*, 82 Mo. 610. (12) Supreme Court will not reverse on ground of excessive damages, unless it is so excessive as to induce the belief that the verdict was the result of prejudice, passion or corruption. *Shelby v. Railroad*, 94 Mo. 574. (13) An instruction to jury "that it might not only allow actual damages, but also

such damages as will afford a wholesome example to others in like cases by way of smart money or exemplary damages'' was approved in *Baldwin v. Fries*, 46 Mo. App. 288. (14) Plaintiff's fifth instruction, on credibility, was passed on and approved, in the noted case of *State v. Noland*, 111 Mo. 473.

WILLIAMS, J.—This is an action for damages for alienating the affections of plaintiff's wife, and wrongfully causing her to abandon him. The petition further charges that defendant debauched her, but the jury was not required to pass upon that issue. The answer was a general denial.

The errors assigned relate to the action of the court in the admission and exclusion of evidence, the giving and refusal of instructions, and the failure to set aside the verdict because excessive.

Plaintiff's evidence tended to show that he was married August 1, 1889, and that he and his wife lived together happily thereafter, until in the month of December, 1892; that, during all that time, she was kind, dutiful and affectionate, and that he treated her with all the consideration and kindness of a devoted husband. The father and mother of plaintiff's wife were residing with defendant upon his farm, having gone there in November, 1892. The parties were in no manner related to each other. Defendant had no family and they were living with him to help upon the farm and to keep house for him. The plaintiff and his wife in December, 1892, moved into the dwelling where defendant and the father and mother of plaintiff's wife were living, as above stated. The plaintiff went there to assist his father-in-law in work upon the farm. Defendant was a large landowner, and reputed to be a man of wealth. He began, within a week or two after the arrival of plaintiff's wife, to show her marked

attention.  He soon boldly protested his love for her, made her presents, and stated that he intended to get a piano for her.  He put a diamond ring upon her finger, and let her have it to wear.  He advised her to get a divorce from plaintiff, and suggested that she go to Dakota for that purpose.  He offered to go with her and said that they could assume to be brother and sister.  The wife began to treat her husband with coolness and to manifest a preference for defendant's society.  She laid aside her wedding ring for the more beautiful one which defendant was able to furnish her to wear.  She declined to accede to her husband's request to leave the farm and go to another location with him.  The husband, after six or seven weeks spent, upon defendant's place, determined, under the circumstances mentioned, to leave.  His wife at first asked him to stay.  Defendant told her to "let her husband go if he wanted to; that he (defendant) could take better care of her than" her husband.  Then she ceased to ask him to remain.  The proof showed that defendant said at one time, the sooner he could get rid of plaintiff, the quicker he could have plaintiff's wife.  Upon several occasions, during his temporary absence from home, defendant wrote most affectionate letters to Mrs. Hartpence.  The husband, in the latter part of January, 1893, left defendant's farm.  The wife refused to go, and remained there with her father and mother.  They stayed some ten months longer, and then left.  Plaintiff obtained a divorce from his wife. They never lived together after January, 1893.

Without setting out any more of plaintiff's evidence, it is sufficient to say, that the testimony upon his part tended to show a systematic and constant effort by defendant to win the affections of plaintiff's wife, to break the ties between her and her husband, and cause her to abandon him.  The defendant intro-

duced only one witness, who was called simply for the purpose of testifying to statements alleged to have been made by plaintiff's mother-in-law (who was a witness for him) contradictory of the evidence given by her upon the stand. Defendant was called by plaintiff and identified as in his handwriting, some of the amorous and tell-tale letters written by him. He did not deny any of the damaging statements concerning his conduct and conversations testified to by plaintiff's witnesses, but remained entirely silent upon that subject. In fact his actions might well be said to be convincing evidence of the truth of what had been stated.

1. The first question that arises is the correctness of the court's ruling upon the competency of evidence offered.

During the examination of plaintiff, he was asked, by his counsel *what* caused *him* to leave defendant's farm. He answered: "He (defendant) gained the affections of my wife and she was no more a wife to me." Defendant objected to this answer and saved an exception. It is argued that this statement was a conclusion of the witness and not the statement of a fact. Plaintiff was called upon to give *his reason* for refusing to remain at the farm. No objection was made to this question. The response was a legitimate answer to *that* inquiry. The testimony was not offered to show the *fact* of the *alienation* of the wife's affections. If the witness had said in answer to this question that he went away because he *believed* defendant had alienated his wife's affections, it would have been an appropriate answer. Yet his *belief* would not have been competent to establish the *fact* which he believed to be true. Still, it would have been a proper answer, if it was material to know his reasons for his actions. The witness was being interrogated as to why he left defendant's place,

and his answer had reference to what he understood to be the facts, and upon which he acted.

If, however, the statement should be held to be a mere *conclusion*, it is such a conclusion as all the evidence shows beyond peradventure was a correct one, and which defendant did not offer to dispute. The defendant could not possibly have been injured by the admission of this evidence in view of the other testimony in the case.

Several exceptions were taken during the progress of the trial to the exclusion of questions asked the witnesses by defendant. We have carefully examined each of them. It will serve no purpose, except to lengthen this opinion, for us to set them out here. Suffice it to say that we find no fault with the rulings of the lower court in said matters.

2. The first, third and fourth instructions for plaintiff contained a direction to the jury to find for him, if they believed from the evidence that defendant intentionally persuaded plaintiff's wife to separate and remain apart from him. These instructions contain other matters, which will be noticed later, but all of them include in substance the above direction. They are almost exact copies of those approved in *Modisett v. McPike*, 74 Mo. 636. It is argued by appellant that the jury, by these instructions, was authorized to return a verdict against defendant, upon the proof alone of the fact that he persuaded plaintiff's wife to leave him and separate herself from him, without reference to defendant's motives in so doing. It is said that a wife may have a good cause to abandon her husband and that a third party in no manner related to her, may, from the best motive, persuade her to do so. This court answered a similar contention in the following language: "The wife may have a just cause for separation or divorce, but she may elect to abide

by her situation and remain with her husband never-
theless.   If she chooses to do so, no stranger has the
right to  intermeddle with the domestic and marital
relations  of husband and wife and if he voluntarily
does so, he is amenable for the consequences. . . . No
one unasked, especially a stranger, has the right to
volunteer his advice or protection and if he does so he
is amenable.   'It is one thing to actively promote
domestic discord, but quite another to harbor, from
motives of kindness and humanity, one who seeks
shelter from the oppression of her own lawful pro-
tector.'   It has been well said that 'such conduct,
whatever the motive, is exceedingly perilous on the
part of a stranger, generally open to misconstruction
and never to be encouraged.' "    *Modisett v. McPike,*
74 Mo. 646.

The principle announced in the instructions com-
plained of, and in almost the same language, met with
the approbation of the entire court in the case cited.
We have no disposition to depart from that ruling.   It
is a safe rule to lay down, as this court has done, that
a husband makes a *prima facie* case against a stranger,
when he shows that such stranger voluntarily and
unasked intermeddled with his domestic affairs, and
intentionally urged, persuaded and induced his wife to
desert and abandon him, and to refuse to live with
him; and in the absence of anything in the evidence,
as in this case, to justify or excuse such conduct, the
plaintiff's right to a recovery, upon proof of such
facts, is established, and the jury was properly so
instructed.   *Modisett v. McPike, supra.*

The issues submitted in the instructions were in-
cluded in the allegations of the petition.   The fact
that more was alleged than it was necessary for plain-
tiff to prove, in order to entitle him to a verdict, could
not prevent his recovery, where he averred and proved

enough to make out his case. *Campbell v. Railroad,* 121 Mo. 340; *Radcliffe v. Railroad,* 90 Mo. 127.

3. The third instruction is also objected to, on the ground that it refers the jury to the petition to ascertain the issues. *After setting out all the facts necessary to entitle plaintiff to recover,* it adds "as stated in the petition." This is not error. It comes within the rule in *Britton v. St. Louis,* 120 Mo. 437, and *State v. Scott,* 109 Mo. 226.

It is also argued that this instruction is erroneous because it speaks of defendant's causing the wife to "sever the marriage relation of husband and wife" and it is said that death or divorce only could do this, and that the wife could not accomplish it. We do not think that the jury could have been misled by this expression. It would be readily understood to refer to the actual severing of the relations of husband and wife, and not to the legal separation by divorce or the dissolution of the marriage relation by death.

4. The fourth instruction is criticised. It is as follows:

"4. In order to entitle plaintiff to maintain this action it is not necessary that he should prove by his evidence in the cause that the defendant directly requested plaintiff's wife to leave him, or remain apart from him, or to institute a suit for divorce against him; but if the jury believe from the evidence in the case that the defendant was intentionally guilty of such conduct as was calculated to prejudice plaintiff's wife against him, and to alienate her from him, and to induce her to leave him, to remain apart from him, and that such effect was intended to be produced by the defendant and was actually produced by his conduct, then the jury should find for plaintiff."

This is identical with the second instruction in *Modisett v. McPike,* cited above. It is said that it is

not intelligible. We do not think that there is any difficulty in understanding its meaning, or that the jury could have been in doubt as to what the court intended to say by it.

5. Complaint is made that the court gave an instruction in the usual form, to the effect, that if any witness had willfully sworn falsely to any material fact, the jury might disregard the entire evidence of such witness. The ground of this objection is not to the language of the instruction, but that the evidence was not such as to warrant it. Defendant introduced a witness, for the sole purpose of impeaching one of plaintiff's witnesses by showing previous statements contradictory of her evidence upon the trial. There was a direct conflict between their testimony. While a mere difference in the evidence of witnesses, in ordinary jury trials, will not warrant the giving of this instruction, simply because of such difference between them, yet when there is a material conflict in the testimony, and the trial judge, who has such witnesses before him, and sees their conduct and demeanor upon the stand, gives such an instruction it will not be error. *Millar v. Car Co.*, 130 Mo. 517.

The instruction concluded as follows: "And in passing upon the credibility of a witness, the jury are at liberty to take into consideration his manner upon the witness stand; the interest he may manifest, if any, in the case; the reasonableness or unreasonableness of his testimony as compared with the other testimony in the case."

It has been often decided that the jury in determining the credit to be given a witness may consider his interest in the result of the suit, or his relationship to the parties. So if a witness shows a prejudice against one litigant, or manifests an interest in having the suit result favorably to the other, it may upon the same

principle be considered in determining the weight that his testimony should receive. The last clause simply means that, in weighing the conflicting testimony in the case, the jury should consider which statement was the most reasonable; that where the witnesses differed the reasonableness or unreasonableness of their respective statements should be considered. 2 Thompson on Trials, sec. 2418.

6. This instruction was given for plaintiff. "If the jury find for plaintiff, they will assess his damages at any sum they may deem just, not exceeding ten thousand dollars; and in estimating his damages, they may take into consideration the injury sustained by him in the loss of the comfort, society and service of his wife and the wrong and injury done to his own feelings, character and condition; and they may allow such sum by way of smart money as they consider the defendant from the evidence in the case by his conduct deserves, not exceeding in all $10,000."

This instruction also is copied from *Modisett v. McPike*, 74 Mo. 636–641. The first part enumerates the elements that the jury might consider in estimating the damages. Plaintiff should certainly be entitled to recover, in case where the affections of his wife had been alienated, and she had been caused to desert him, (if there can be any recovery at all) for the loss of the society, comfort and services of the wife, and for the injury done to his feelings. It is said, however, that no injury to the husband's character, or reputation, which is the sense in which the word is used in this instruction, results in a case of this kind. Hence the injury to his reputation or standing should not have been included. It is argued by appellant that people would not think less of *him* "because *she* had gone wrong." This argument would be equally good in criminal conversation cases, suits for seductions, and

kindred cases.   Yet in a suit for seduction, it is settled "that the jury may also award the parent compensation for the disgrace and dishonor cast' upon him and his family."   *Morgan v. Ross*, 74 Mo. 318, and cases cited therein.   In criminal conversation cases it has been said that the dishonor brought upon the husband may be considered as an element of damages.   *Matheis v. Mazet*, 164 Pa. St. 580.   This case is only different in *degree* and not in *kind* from those mentioned.   We do not see that the word "condition" adds anything to the instruction, or that it was in any way harmful.

It is claimed, also, that this instruction authorized exemplary or punitive damages, without requiring the jury to find that defendant's conduct was wanton, malicious or was from an improper motive.   Exemplary damages can not be given for an ordinary tort, in the absence of proof of malice, wantonness, etc.   *State to use v. Jungling*, 116 Mo. 162.   The propriety of an instruction is to be determined in connection with the evidence upon which it is based.   A direction to a jury might be reversible error in one case, when the same instruction in a case where the facts were different, would be upheld.   It is improper to assume in an instruction the existence of facts, which are for the jury to find.   Yet, where such an assumption has been made, and it is apparent that there was no controversy about the fact so assumed, it has been held not to be error.   In this case the jury affirmed, by their verdict, that the defendant intentionally persuaded plaintiff's wife to abandon him.   The only evidence upon which *this* finding *could* have been based, showed that defendant boldly stated that his motive was to take the wife for himself, and that the sooner he could get rid of the husband, the sooner he would have her.   In fact, the defendant's conduct and the motives that prompted his actions were not disputed even by his own testimony.

The result could not have been different under this evidence, with the qualification to the instruction suggested by appellant. There was no error committed in giving this instruction, "against the appellant and materially affecting the merits of the action." R. S. 1889, sec. 2303.

7. The court refused to instruct the jury that there was no evidence of seduction, or criminal intimacy by defendant with plaintiff's wife. This was properly refused. It is true that there was no *direct testimony* to that effect. The court could not, however, properly have instructed that there was no evidence from which the triers of the facts could find the existence of such improper relations. Defendant openly declared his love for one known to him to be a married woman. He was her constant companion when circumstances permitted, and made no secret of his desire to separate her from her husband and supplant him in her affections. He wrote in one of his letters, "my life seems full of brightness, *when your arms are around me.*" Other letters of the most amorous character are in evidence, and other circumstances which we have no disposition to enlarge upon, convince us that the court properly refused to say that there was no testimony from which the jury might find the existence of criminal intimacy.

8. We are asked to reverse the judgment because the damages are excessive. The amount awarded by the jury was $5,250. This may seem large. But it is no light matter to entice a wife from her husband. The home is the foundation upon which society rests. The marriage relation should be held sacred. The evidence does not disclose a suspicion against the reputation of the wife until she came under the influence of defendant. The testimony is, that the husband was affectionate, and she was kind and dutiful. They lived

happily together. The defendant was a man of property. He began his attentions to the wife almost as soon as she removed to his farm and soon enticed her from the path of duty to her husband. He wanted to get rid of plaintiff that he might get his wife. It is not strange that the jury awarded the sum stated in the verdict. "The amount of the damages in such cases is considered a question peculiarly within the province of the jury, and as one which can not from the very nature of things be estimated or computed upon any mere compensatory or pecuniary basis, and courts certainly would not interfere with a verdict in this or kindred cases, where there is no scale whereby the damages can be graduated with certainty, unless proof be introduced showing flagrant abuse of those powers which the law had confided to the intelligence and good sense of the jury." *Morgan v. Ross*, 74 Mo. 318. The learned judge who presided at the trial refused to interfere with the verdict, and we find nothing in the record, that would justify a reversal, and we accordingly affirm the judgment. BRACE, P. J., and ROBINSON, J., concur.