## HENRY C. SMITH, Appellant, ATCHISON, TOPEKA, & SANTA FE RY. CO., Respondent.

Kansas City Court of Appeals, April 2, 1917.

**DAMAGES: Actual and Punitive: New Trial: Right of Trial Court to Interfere with Award of Punitive Damages.** In an action for wrongful ejection of passenger from train, the jury awarded plaintiff $5 actual and $500 punitive damages. The trial court thought $100 punitive damages was sufficient and directed a remittitur of $400, and, upon refusal of plaintiff to comply, granted a new trial. Since the decision of the Supreme Court in State ex rel. v. Ellison, 268 Mo. 225, a trial judge has the same power to order a remittitur in an award of punitive damages as in one of compensatory damages; and following that case as "the last previous ruling" of the Supreme Court, and in obedience thereto, the act of the trial judge in disagreeing with the jury as to the amount to be awarded for punitive damages, and in granting a new trial on plaintiff's refusal to enter the required remittitur, is upheld even though the award made by the jury was not so large as to be outrageous or induce the belief that the jury acted from partiality, prejudice or other improper motive.

Appeal from Buchanan Circuit Court.—*Hon. C. H. Mayer*, Judge.

AFFIRMED.

*C. F. Strop* for appellant.

*Culver & Phillip* for respondent.

TRIMBLE, J.—This is an action to recover damages for wrongful ejection of a passenger from one of defendant's trains. The verdict was of $5 actual and $500 punitive damages. The circuit court thought the punitive award excessive, and, on consideration of the motion for new trial, offered plaintiff the opportunity of remitting $400, in which event judgment would be entered for $5 actual and $100 exemplary damages. Plaintiff declined to make the remittitur, and the motion for new trial was sustained solely because the court regarded $500 as an excessive award of punitive damages. Thereupon the plaintiff appealed.

Defendant operated certain suburban gasoline motor cars on one of its branch railroads. Plaintiff boarded one of these passenger conveyances at Gower, Missouri, desiring to be transported as a passenger to St. Joseph, Missouri, a distance of twenty miles. He arrived at the station just as the train was leaving and did not have time to purchase a ticket. The lawful rate of fare was two cents a mile and according to that rate he tendered the conductor forty cents for the full distance he wished to go. The conductor refused to accept this amount and demanded sixty cents which would be three cents per mile. Plaintiff refused to pay this rate and the conductor, in the presence of the passengers, told him he would stop the car and put him off. Plaintiff would not pay more, and the conductor stopped the car, took plaintiff by the arm, led him to the door and put him off. After being put off he told the conductor he was a deputy sheriff and "would like to go on." The conductor replied, "I don't give a God damn who you are, you are off now," and would not take him. The car at this time was a half or three-quarters of a mile from the station. It was about 6:30 p. m. of August 14, 1913, a hot summer evening. Plaintiff had to walk back to the station

where forty or forty-five minutes later he caught a Grand Island railroad train, operating over the same tracks, and came on to St. Joseph. Plaintiff suffered no illness or untoward physical effects from this. Plaintiff testified that the conductor did not strike him nor offer to do so; that he, the conductor, "got a little mad, not so very much, seemed a little out of humor;" that he was mad because plaintiff would not give him the sixty cents. When asked how the conductor indicated he was mad, plaintiff replied: "He just said I couldn't ride—I think he said, 'By God, you can't ride.'" He was not sure the conductor used the oath last mentioned, but was sure he swore, as hereinbefore stated, after plaintiff was off the car. There was no scuffle or tussle.

The evidence offered in behalf of the defendant as to what took place between the plaintiff and conductor does not differ greatly from plaintiff's version, except that the conductor denies using any oaths. The brakeman, who was at the rear of the car but who knew "there was some kind of trouble" and that the trouble was with plaintiff—though he did not know his name, and that the car was being stopped for the purpose of putting him off, went to them so that, if necessary, he could render such assistance as he thought proper. He either followed plaintiff off the car or preceded him. He says he doesn't think the conductor used the language plaintiff ascribed to him after he, plaintiff, was off the car on the ground, but admitted that there might have been some of the conversation he didn't hear. He would not say the conductor did not use it, but only that he did not hear it. Other evidence in behalf of defendant had obtained against the enforcement of the effect that the matter was carried on in ordinary conversational tones, neither seemed to be angry and no excited talk was indulged in so far as the witnesses (who were passengers in the car), heard. There is no question, however, but that the passengers fully understood that plaintiff was being put off the car because he would not pay the amount the conductor demanded.

Some time prior to this the Supreme Court of the United States had dissolved the injunction which the defendant had obtained against the enforcement of the Two Cent Fare law, so that there was then not even apparent authority for the collection of more than two cents per mile. Plaintiff's demand for punitive damages, however, is clearly bottomed upon the *conductor's manner and conduct* towards plaintiff and not upon any malicious conduct of defendant *itself* in instructing its conductors to continue collecting three cents per mile after the Two Cent Fare Law had gone unrestrictedly into force. So that whether plaintiff made a case for punitive damages depends upon the manner and language used by the conductor toward plaintiff at the time of his ejection from the car. If the conductor used the language toward plaintiff which the latter says he did, there was a case for punitive damages in some amount at least. And it will be observed that the trial court, as well as the jury, found that plaintiff had made a case which permitted the allowance of such damages. In other words, both court and jury accepted plaintiff's version of the case. The only difference was that the jury thought the punitive damages should be fixed at $500 while the court thought $100 was sufficient.

The question, therefore, raised by plaintiff's appeal is as to whether the trial court, *having recognized that a case for punitive damages was made,* had the power to set aside the verdict for the sole reason that, in his opinion as a thirteenth juror, the award of punitive damages was greater than he thought it should be.

The appeal was first submitted to us at the October term, 1915, and an opinion by ELLISON, P. J., was handed down December 18, 1915. [See Smith v. Atchison T. & S. F. R. Co., 192 Mo. App. 210, 180 S. W. 1036.] This court entertained the view that in a case where punitive damages, under any view of the evidence was at all permissible, not only was it a question for the jury to say whether *any* such damages should be allowed, but that, if they were allowed, the *amount* thereof was a matter within the exclusive province of

the jury, *subject* to the right of the court to set aside the award *only* in case it was so great as to appear outrageous, such that all reasonable men would unhesitatingly pronounce so unreasonable as to induce the belief that the jury, in making such an award, must have acted from partiality, prejudice, or other improper motive. It would seem that, up to that time at least, the authorities justified that view. In 3 Graham & Waterman on New Trials, 1135, it is said:

"According to the language, however, of adjudged cases, to justify the court in setting aside a verdict, the damages ought to appear outrageous, or manifestly to exceed the injury, and such that all mankind would at once pronounce unreasonable, and so as to induce the court to believe that the jury must have acted from prejudice or partiality, or were influenced by some improper considerations."

In the case of Sargent v. —————, 5 Cowen, 106, 118, 119, the court denied the right of defendant to a new trial asked for on the ground that the award was excessive. The court said the damages "appear to be much larger than they should have been," but that they were not "so flagrantly outrageous and extravagant as necessarily to evince intemperance, passion, partiality or corruption on the part of the jury; and where that is not the case, the court will not undertake to set their judgment on a question of damages, in an action of this nature, in opposition to the judgment of the jury. It is the judgment of the jury, and not of the court which is to determine the damages."

In Coleman v. Southwick, 9 Johnson 45, 51, where plaintiff's verdict was attacked as excessive, Chancellor Kent said:

"The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike every one with the enormity and injustice of them, and so as to induce the court to believe that the jury

must have acted from prejudice, partiality or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to say, that in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries.''

And on page 52 of the same case, he said:

''The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess.''

In Morgan v. Ross, 74 Mo. 318, 325, our own Supreme Court said:

''In vindictive actions, and so this action is now regarded, damages are given for the two-fold purpose of setting an example and of punishing the wrongdoer. It is believed that no case can be found in the books where the verdict in an action such as this has been set aside upon the sole ground of awarding excessive damages. Peculiar considerations exempt a verdict in an action of this nature from the interference of the court, when such interference is sought to be bottomed alone on the excess of the recovery. The amount of the damages in such cases is considered a question peculiarly within the province of the jury, and as one which cannot from the very nature of things be estimated or computed upon any mere compensative or pecuniary basis (Taylor v. Shelket, 66 Ind. 297); and courts certainly would not interfere with a verdict in this, or in kindred cases, where there is no 'scale whereby the damages can be graduated with certainty, unless proof be introduced showing flagrant abuse of those powers which the law

had confided to the intelligence and good sense of the jury.''

This was afterwards approved in Hartpence v. Rogers, 143 Mo. 623, 638.

It was, therefore, our view that inasmuch as both the trial court and the jury agreed that punitive damages should be awarded, the amount thereof as fixed by the jury was not subject to revision by the trial court *unless* the amount was so flagrantly outrageous and out of proportion to the facts presented in sup- port thereof as to cause all reasonable and fair minded men to at once recognize the fact and say the jury must have been swayed by feelings and motives which were not proper and which unquestionably warped their judg- ment.

The case being one in which punitive damages were permissible, the question whether they should be allowed was exclusively for the jury *and not for the court.* [Carson v. Smith, 133 Mo. 606, 617; Nicholson v. Rogers, 129 Mo. 136, 141.] This being true, we were of the opinion that the survey made by the trial court in order to determine whether the verdict as to such damages should stand, *had to be confined to the evidence tending to support the award* and could not extend to the defendant's evidence in opposition thereto. Other- wise, the trial court would substitute *its* judgment for that of the jury, as to the allowance of punitive dam- ages, merely because the judge accepted as true cer- tain evidence of the defendant in opposition to such damages. But, in a case where, under any view of the evidence, punitive damages is at all permissible, the *jury alone* has the right to say whether they will be allowed or not. And, therefore, the trial court cannot say the jury's punitive award must not stand, merely because the court believed certain evidence which the jury by their verdict show they did not believe. The same is true with regard to disputed evidence offered by defendant in mitigation of such damages. For if the court, merely because *he* believes that some dis- puted evidence offered by defendant in defense or in

mitigation of punitive damages is true, can say that the award thereof is too much, then he is substituting his judgment for that of the jury as to the *measure* of such damages. In all other kinds of damages the court gives instructions as to their measure, but as to punitive damages he is not allowed to *even hint* a measure. The jury are merely told under what circumstances they may allow them if they see fit, and the amount thereof is left to their honest, unbiased and impartial judgment.

As hereinbefore stated, there is practically no difference between the evidence of plaintiff and that of defendant as to what took place at the time of the ejection, except as to the matter of the conductor's cursing. The defendant further sought to establish the theory that plaintiff boarded the train and tendered his cash fare for the purpose of making a test case of the defendant's right to collect the three cents a mile the defendant was required its conductors to demand. This the plaintiff denied. As both court and jury agree that punitive damages should be allowed, they did not accept the defendant's contentions either as to the conductor's language and conduct or to plaintiff's alleged motive in getting on the car and failing to pay the sixty cents. But if plaintiff had such motive it was not an unlawful one, and did not justify the conductor in demanding, without authority of law, three cents per mile, and putting plaintiff off and using profane language in doing so. At most plaintiff's motive, if he had it, could only reduce the punitive damages. Though this might seem to relieve defendant of a part of its punishment for an unlawful act merely because the plaintiff, in a proper manner, asserted and stood upon his right. And even if the trial court, in passing upon the motion for new trial, thought plaintiff had such motive, and, on this account, thought the punitive damages were $400 too much, or even if he agreed wholly with the jury as to the facts, but thought that, under the circumstances, the plaintiff being an adult, a deputy sheriff, etc., $100 was enough punitive

damages for wrongfully putting him off the train in the presence of others and subjecting him to this disagreeable and humiliating experience, and the necessity of walking the ties for half a mile back to the station on a hot August afternoon or evening, still this was a setting up of his judgment against that of the jury as to the *measure* of the punitive damages that should be awarded. And since the question of the *measure* of such damages was peculiarly with the jury, subject only to the requirement that they must not extend beyond the bounds of reason, we were of the opinion that only the evidence tending to support the verdict should be considered in determining whether it was so out of the bounds of reason as to justify the court in setting it aside. And since we did not think $500 could be said, as a matter of law, to be out of reason for the unlawful subjecting of a man, even a deputy sheriff, to such an experience, we were of the opinion that the court's action was unauthorized and not in harmony with the authorities then in existence. The trial court agreed with the jury in their conclusions on the weight of the evidence as to its calling for punitive damages, but disagreed with the jury as to the amount thereof, and set the verdict aside on that account. This court, therefore, reversed the judgment and remanded the cause with directions to reinstate the verdict, since, upon the facts found and *approved*, it was "too apparent to question that the verdict in this case was not so flagrantly and outrageously beyond the limits of reason as to force a conviction of passion, prejudice or corruption on the part of the jury." [192 Mo. App. 210, 180 S. W. 1038.]

On *certiorari*, however, the Supreme Court held (186 S. W. 1075) that it was difficult to see any reason for any distinction between the rule defining the power of a trial court over an award of punitive damages and one of compensatory damages, and that, on principle, the same rule requiring appellate courts to uphold the trial court in the granting of a new trial where there is any substantial evidence to support such action;

"ought to and does apply" in a case where the new trial is granted upon an award of punitive damages as upon any other damages. The court then held that if upon the *whole case* there was any substantial evidence to support the action of the trial court, it should be upheld, and that since we did not consider the *whole* evidence to see whether there was some substantial basis for the court's action, we applied an erroneous test. Our judgment was then quashed. The Supreme Court was asked by defendant to render final judgment on the merits of the case but held that it was without jurisdiction to do so, citing Smith v. Atchison, etc., R. Co., 186 S. W. 1072, which holds that the Supreme Court has no such jurisdiction and cannot interfere with a judgment of the court of appeals unless the latter, in rendering its judgment, failed to follow the last previous ruling of the Supreme Court. The case was then sent back to us to consider anew, and, being now before us, we, in accordance with that mandate, proceed to do so.

Under the ruling now promulgated by the Supreme Court in said case of *certiorari* (186 S. W. 1075), we must scan the entire record, and, if there is any substantial evidence anywhere therein which, if accepted by the trial court as true, would justify him in thinking the award of punitive damages was greater than is warranted by the facts, then the action in granting a new trial must be upheld. On the undisputed facts and those established by the verdict of the jury, and *approved by the trial judge since he thought there should be punitive damages to the extent of $100,* we do not think it can be said, as matter of law, that $500 is excessive punitive damages for the wrongful and unauthorized putting of a man off a train under the circumstances disclosed.

If, however, notwithstanding the trial judge's recognition of the fact that punitive damages to the extent of $100 was proper, he could consider disputed evidence offered by defendant, namely, that plaintiff got on the car and tendered forty cents cash fare in

order to have a case, and, believing that to be true, thought that under those circumstances, the experience and treatment plaintiff received did not warrant the imposition of punishment to the extent of $500, then the granting of the motion for a new trial may be proper. At any rate we so hold under the ruling of the Supreme Court. The judgment of the trial court is, therefore, affirmed. *Ellison, P. J.,* concurs in seperate opinion. *Bland, J.,* not sitting.

## SEPARATE CONCURRING OPINION.

ELLISON, P. J.—If it be granted that the trial court, in passing on the motion for new trial had authority to look to the entire evidence in the case, that for defendant as well as that for plaintiff, in order to determine whether punitive damages were excessive, that does not touch the real question involved. The real question is whether the court or the jury measure punitive damages. Of course, if there is *no* substantial evidence to justify such damages, the court can so declare as a matter of law. And if there is evidence to sustain punitive damages, yet they are put so excessively high, or low, as to strike all reasonable persons as an outrage so as to show that the jury abandoned its functions as a solemn deliberative body, the court may interfere.

In this case the trial court refused defendant's demurrer, submitted punitive damages to the jury and sustained a verdict for such damages; the trouble being that it thereafter assumed authority to fix the *amount* of such damages. By reference to our opinion when the case was first here (192 Mo. App. 210, 180 S. W. 1036), it will be seen that we undertook to make plain, by reference to the Missouri cases and other authority, that it was the exclusive province of the jury to name the sum of a plaintiff's recovery, never to be interfered with by the court except in the instances just stated, where the amount was such as to demonstrate that the jury had abandoned the functions of jurymen and had

shocked the moral sense. And we decided that five hundred dollars returned by the jury was not so large as to authorize the trial court, under the foregoing rules of law, to say that the jury had abandoned its proper function and committed an outrage against the moral sense. But the decision of the Supreme Court made in this case on *certiorari* is "the last previous ruling" and we, of course, should follow it as required by section 6, article 6, Amendment 1884 to the constitution.