GILBERT GRAY v. DOE RUN LEAD COMPANY, a Corporation, Appellant.
—53 S. W. (2d) 877.

Division One, October 24, 1932.

482

*Parkhurst Sleeth* and *Terry & Terry* for appellant.

484

486

*C. O. Inman* and *Hensley, Allen & Marsalek* for respondent.

ATWOOD, J.—This is an action by Gilbert Gray against the Doe Run Lead Company for damages on account of personal injuries alleged to have been sustained by him through the negligence of said company while he was in its employ. A verdict was rendered for plaintiff in the sum of $10,000 and judgment was entered in accordance therewith on the 21st day of January, 1928. On January 25, 1928, defendant filed motion for a new trial and a motion in arrest of judgment, and on February 24, 1928, while these motions were pending, plaintiff, according to the record, by leave of court entered "*remittitur* of $2500 from the judgment rendered in this cause at this term of court," but no new judgment was entered thereon nor was the original judgment set aside. Defendant's motion for a new trial and motion in arrest of judgment were overruled on May 23, 1928, and on the same day defendant applied for an appeal, which was granted, to the St. Louis Court of Appeals and the appeal bond fixed at the sum of $15,000. When the cause reached the St. Louis Court of Appeals it was transferred of the court's own motion to this court on the ground that the amount in controversy was beyond the jurisdiction of that court. We are thus called upon to determine our own jurisdiction to entertain the appeal.

The General Assembly has power under Section 3 of the Amendment of 1884 to Article VI of the Missouri Constitution "to increase or diminish the pecuniary limit of the jurisdiction of the courts of

appeals." Section 1914, Revised Statutes 1929, enacted in pursuance of this power, is as follows:

"The various courts of appeals of Missouri shall have jurisdiction of appeals and writs of error in all cases where the amount in dispute, exclusive of costs, shall not exceed the sum of seventy-five hundred dollars."

Reading the above statute in connection with Section 12 of Article VI of the Missouri Constitution and Section five of the Amendment of 1884 to said article, which constitutional provisions relate to appellate jurisdiction, it is apparent that the pecuniary ground of the Supreme Court's jurisdiction is limited to cases where the amount in dispute, exclusive of costs, exceeds the sum of seventy-five hundred dollars. Furthermore, in Schwyhart v. Barrett, 223 Mo. 497, 502, 122 S. W. 1049, we construed this section as giving "the Courts of Appeals jurisdiction of causes wherein the amount in dispute at the date of the judgment did not exceed $7,500," and (l. c. 504) where, as here, the defendant appeals we said that "the amount in dispute is to be determined by the amount due at the date of the judgment from which the appeal is taken." In the earlier case of Hensler v. Stix et al., 185 Mo. 238, 239, 84 S. W. 894, we held that "the amount in dispute on such appeal is the amount of the judgment appealed from," and in the recent case of Pyle v. University City, 318 Mo. 856, 859, 1 S. W. (2d) 799, we adopted the same construction.

The only judgment that was rendered in the instant case was for $10,000. This was the amount in dispute at the date of the judgment. True, plaintiff about a month later entered a *remittitur* of $2500 from the judgment rendered, but the old judgment was not set aside and a new judgment entered. Under similar circumstances we held in State ex rel. v. Broaddus, 212 Mo. 685, 111 S. W. 508, that the *remittitur* was to be treated only as a credit on the amount, principal and interest, then due on the original judgment, thus leaving an amount still in dispute sufficient to give us jurisdiction. This ruling apparently proceeds on the theory that on the whole record the amount of the new judgment that should have been entered when the *remittitur* was filed would have been the remainder of the old judgment plus interest on the whole judgment to that date. There having been no remission of interest such was the amount in dispute at the time a new judgment should have been entered. Schilling v. Speck, 26 Mo. 489; Tilford v. Ramsey, 43 Mo. 410, 420; and subsequent cases hold that when a *remittitur* is tendered it should be accepted by the court and judgment entered for the true amount and the plaintiff should see that such is done. In State ex rel. v. Lewis, 96 Mo. 146, 148, 8 S. W. 770, we said that in determining the pecuniary limits of its jurisdiction "the appellate court is not confined to an examination of the judgment only, or the pleadings in the case, but may look into the whole record." See, also, Bridge Co. v. Transit Co., 205 Mo.

176, 179, 103 S. W. 546 and cases therein discussed; and Mathews v. Railroad, 231 Mo. 623, 625, 132 S. W. 1074. So it appears in this case that whether viewed from the standpoint of the only judgment that was entered or the new judgment that should have been entered the amount in dispute is sufficient to give us jurisdiction.

Counsel for respondent suggest that this case is distinguishable from the above cases because the record here shows the appeal bond was fixed without objection at $15,000, thus indicating that the court and all parties concerned treated the judgment appealed from as not in excess of $7,500. If the amount of the appeal bond should be given any significance in the determination of our jurisdiction, we think it would merely indicate that it was based upon the amount of the original judgment, which was the only judgment entered, less the amount of the *remittitur*, and was in no sense given in contemplation of the new judgment that should have been entered. However, the fixing of the appeal bond and the attitude of the parties with reference thereto are circumstances that transpired subsequent to the time the new judgment should have been rendered. They could not have entered into the determination of the amount of the new judgment and should not be considered by us for that purpose now. The pecuniary limits of appellate jurisdiction should be determined from what was before the trial court at the time it should have entered the new judgment because the judgment amount then authorized was the true amount in dispute and should have determined the course of the appeal subsequently taken. As said in Addison Tinsley Tobacco Co. v. Rombauer, 113 Mo. 435, 439, 20 S. W. 1076:

"Where the court to which an appeal should go is to be ascertained, under the Constitution (Constitution, 1875, Art. 6, Sec. 12), by the 'amount in dispute' in a given case, the proceedings therein in the trial court should disclose the facts on which the appeal is to proceed. On the state of the record in the court of first instance depends the question as to which one of the two courts of appeal, the supreme or the appellate court, should have jurisdiction. Hence parties must see to it in the trial court that the full showing they wish to rely upon in that regard in the future course of the case, is made."

Our jurisdiction must affirmatively appear from the record pertinent thereto (McGregory v. Gaskill, 317 Mo. 122, 124, 125, 296 S. W. 123; Stuart v. Stuart, 320 Mo. 486, 488, 8 S. W. (2d) 613; and City of Doniphan v. Cantley, 330 Mo. 639, 50 S. W. (2d) 658), and we hold that in this case it so appears.

Proceeding to the merits of the appeal, we find that plaintiff submitted his case on an amended petition in which he alleged that at the time of his injury he was employed by defendant in one of its lead mines in St. Francois County, Missouri; that he and another employee

were engaged in breaking rock from the floor of the mine by driving an iron gad or wedge-shaped bar into a crevice in the rock; that the other employee was striking the gad with a hammer when the hammer glanced off the gad and struck plaintiff on the right leg between the ankle and knee causing the injury here complained of. Negligence was pleaded as follows:

"1. That defendant negligently furnished plaintiff and the other employee aforesaid a hammer, to strike said gad as aforesaid, which was defective in that the face or striking surface of said hammer was worn, rounded and battered so that there was danger of said hammer glancing off from the gad and striking and injuring plaintiff, which facts defendant knew, or, by the exercise of ordinary care, should have known.

"2. That defendant negligently failed to furnish plaintiff or the other employee aforesaid with a reasonably safe hammer with which to do the work he was engaged in at the time, thereby causing plaintiff's injuries.

"3. That the employee of defendant using said hammer negligently caused or permitted said hammer to strike the gad in such a manner as to cause it to glance off of said gad and strike plaintiff on the leg, thereby causing plaintiff's injuries."

In its answer defendant admitted its corporate capacity and set forth the following plea of contributory negligence:

"That plaintiff negligently and carelessly chose Armstead Leonard to strike the gad mentioned in plaintiff's petition; negligently and carelessly failed to look out for his own safety; negligently and carelessly failed to hold the gad steady so that the person striking the gad could hit it; negligently and carelessly placed his foot upon the gad instead of holding the gad steady and holding it with his hands; negligently and carelessly placed his leg so near to the gad that the leg was likely to be struck; negligently and carelessly permitted and caused the hammer mentioned in plaintiff's petition to be used; negligently and carelessly selected the particular hammer mentioned in plaintiff's petition to be used."

The answer also contained a plea of assumption of risk. Plaintiff's reply was a general denial.

■ The first point urged by appellant is that plaintiff's petition failed to state a cause of action and the reasons advanced in support of this contention we shall now state and discuss *seriatim*.

A. "The master is not bound to furnish the servant with the best or safest appliances," and "in the case at bar the plaintiff only claims that the defendant furnished an old hammer instead of a new one." We find no fault with the rule stated but it is without application to plaintiff's pleading in this respect, which is that the hammer furnished was defective in that its face or striking surface "was worn, rounded and battered." The pleading was not, as appellant states,

merely that "defendant furnished an old hammer instead of a new one."

B. "The rule that a master must exercise reasonable care to provide reasonably safe appliances for his servants does not apply where the appliances are of simple nature, in which any defects can be readily observed by the servant." In Williams v. Pryor, 272 Mo. 613, 625, 200 S. W. 53, we held that the so-called simple tool doctrine is in its last analysis "nothing more than that of contributory negligence," and although the Williams case was reversed by the Supreme Court of the United States, (254 U. S. 43), yet it is still authority for holding that in a Missouri common-law action the simple tool doctrine is but an application of the doctrine of contributory negligence. [Probst v. Heisinger Motor Co. (Mo. App.), 16 S. W. (2d) 1005, 1007; Nolen v..Halpin-Dwyer Const. Co., 225 Mo. App. 224, 227, 29 S. W. (2d) 215; Whittington v. Westport Hotel Operating Co., 326 Mo. 1117, 1129, 33 S. W. (2d) 963; Compton v. Const. Co., 315 Mo. 1068, 1087, 287 S. W. 474.] Plaintiff's petition did not on this account fail to state a cause of action.

C. "The master is not liable for the consequences of danger, but only of negligence." In plaintiff's three specifications of negligence above quoted the acts alleged are characterized as negligently done. The first specification does recite that the hammer "was worn, rounded and battered so that there was danger of said hammer glancing off from the gad and striking and injuring plaintiff," but the word "danger" does not occur in the other specifications of negligence and was evidently here used in the sense of "likely" or "in all probability."

D. "An employer is not negligent where the servant is apprised of the peril, or where it is obviously known and appreciated." This again is merely another way of stating the defense of contributory negligence which must be and was in this case specially pleaded and was a question for the jury if a case was made for the jury. None of the cases cited by appellant under these heads bear out the claim that plaintiff's petition failed to state a cause of action.

Appellant next insists that no case was made for the jury. It appears from the evidence that plaintiff's duties were to construct and keep in repair an underground railroad over which defendant transported its small ore cars to and from the heading, or place where the mineral was obtained, to the place where it was dumped into defendant's mill. This railroad was laid on ties about four feet long placed about two feet apart. After mineral and rock were taken out of the heading it was necessary to extend this railroad further into the mine and nearer the heading, and plaintiff was required to extend this construction and keep the track in condition for cars to run upon it. The greater part of the mine where the track was

to be built had been blasted down, but small ledges of rock remained which had to be removed in order to provide a place wide enough for the ties to be laid. The usual means of doing so was to drive a gad between the bottom and the small projecting part, thus breaking off the upper piece, and plaintiff testified that "the shovelers would do that."

Plaintiff's hours in the mine were from seven o'clock in the evening until three o'clock in the morning. He was injured about eleven o'clock at night. He testified that his foreman had instructed him to procure help from the shovelers whenever it became necessary to take up rock as above indicated, and told him further to "get a hammer just anywhere you can find it." That night when he needed a man to help him take up this rock he called on a shoveler named Leonard "because he was the only man there." Plaintiff procured a gad and stuck it in a crevice between the rock and the floor and put his right foot on the gad to hold it steady. Leonard procured a sixteen-pound sledge hammer in the heading and began striking the head of the gad. He hit the gad "five or six licks" and the sixth or seventh blow resulted in the hammer glancing off the head of the gad and striking plaintiff as above stated. The men used carbide lights. Plaintiff testified that there was no other hammer available except a spike hammer and it was not heavy enough to drive the gad; that he did not examine the hammer until it glanced off the gad and struck him, that he then examined it and found "the edges of the hammer were worn off and that made it round on the edges. . . . The striking part. . . . The one we were using was beat off on the edges." Plaintiff further testified that he had seen Leonard use a hammer before, that "he was striking at this gad just like he always struck at it," and he "had seen him strike many a gad like that."

We shall now state and discuss the several reasons assigned by appellant's counsel why, as he contends, no case was made for the jury.

A. "That under the evidence defendant was not shown to be guilty of any act of negligence." The well-settled rule is that the master owes the servant the non-delegatory duty of furnishing him reasonably safe tools with which to perform his work. [Williams v. Pryor. 272 Mo. 613, 620, 200 S. W. 53.] There was evidence in this case that the hammer used was the only one available that was heavy enough to drive the gad, that defendant had given plaintiff orders "to use what hammers we could get," and that the hammer thus furnished the shoveler, who was the only person there to aid plaintiff, was so "worn off, beat off and round on the edges" as to "cause it to glance" off the head of the gad. There was also evidence to the contrary, but plaintiff's testimony was sufficient to take to the jury the issue of defendant's alleged negligence in failing to provide reasonably safe tools.

B. "The plaintiff was a railroader of experience; he knew a good hammer or a good gad as well as the master." Plaintiff testified that he "was railroading, building railroad track," and "had been doing that work about six months." His duty was "to keep the track up as near level as we could and extend it out." He testified further: "The usual way to take up bottom was by drilling it and shooting it off, and then what was left would be taken off the way we were doing it. The shovelers would do that." As said in appellant's statement: "The main business of the railroader was putting down these ties, placing the rails on the ties and then driving spikes into the ties to hold the rails down." It was not plaintiff's duty but that of the shovelers to take out the rock, and when small projections were left on the sides or bottom that interfered with laying the ties plaintiff's foreman had instructed him to call on the shovelers to aid him in this manner. ■ It does not appear from the evidence that it was any part of plaintiff's duty to select tools for the shovelers, and the record shows that Leonard and not plaintiff selected the hammer that was used in this instance. Whether or not the defect now complained of was so obvious that under all the circumstances in evidence plaintiff should have observed it before the alleged injury was inflicted was a question for the jury. Furthermore, this case is unlike Forbes v. Dunnavant, 198 Mo. 193, 195, 209, 95 S. W. 934, and Probst v. Heisinger Motor Co. (Mo. App.), 16 S. W. (2d) 1005, relied on by appellant, where the servant had a mass of material or a number of tools from which to choose. There was evidence that the hammer used was the only one heavy enough to drive the gad that was obtainable at the time and place in question. Even if it could be said that Leonard was negligent in using the hammer in the condition it was and that plaintiff's injury was caused by the negligence of a fellow servant, the defendant would still be liable because the injury was sustained in the operation of a mine. [Secs. 3283 and 3284, R. S. 1929.]

C. "Where the evidence tends to prove two or more causes of injury, one of which defendant is liable for and one or more of which he is not liable for, plaintiff must fail in the absence of a showing that his injury came from the former." Under this head appellant suggests that the glancing blow may have been caused by an unsteady or slanting position of the gad. We find no evidence that the gad was in such position, and this point is ruled against appellant.

■ D. "If one in the course of his employment is aware of the master's mode of doing business and continues without protest to or promise from the master he assumes the risk and the master is not guilty of negligence." We find nothing in the record that would bring the case within such doctrine and this point is likewise ruled against appellant.

494

█ Counsel for appellant assigns reversible error in the giving of Instruction 1, requested by plaintiff. This instruction is as follows:

"The court instructs the jury that if you find and believe from the evidence that on the 7th day of May, 1926, plaintiff was at work for the defendant within the regular scope of his employment in one of defendant's underground mines in St. Francois County, Missouri, and was engaged in holding a gad while same was being struck by another employee with a hammer; and that plaintiff was in the exercise of ordinary care; and if you further find and believe from the evidence that said hammer was furnished by defendant to plaintiff and the other employee as aforesaid to use in said work, and that said hammer was defective and not reasonably safe, in that the face or striking surface of said hammer was worn, rounded and battered, and that the defendant knew, or by the exercise of ordinary care could have known, of the defective and unsafe condition of said hammer, if defective and unsafe as aforesaid, and that by reason of said defective condition, if defective, there was danger of said hammer glancing off the gad and striking and injuring plaintiff while doing the work aforesaid, and that the defendant knew, or by the exercise of ordinary care should have known, of such danger, if any; and that said hammer, by reason of its defective and unsafe condition aforesaid, if defective and unsafe as aforesaid, did glance off the gad and strike and injure plaintiff while doing the work as aforesaid; and if you further find and believe from the evidence that the act of defendant in furnishing to plaintiff and the other employee aforesaid the said hammer if so, was negligence on the part of the defendant, and that plaintiff was injured, if injured, as a direct result thereof, then your verdict must be for the plaintiff."

The first criticism is that there was no evidence that the face or striking surface of the hammer was "battered." While this particular word does not appear in the record of the evidence, plaintiff did testify that after the injury occurred he examined the hammer used and found that it "was beat off on the edges." We do not think the instruction was in this respect any broader than the evidence.

█ It is next contended that the instruction "assumes that the hammer was furnished by the defendant." On the contrary, the instruction in this respect reads, "and if you further find and believe from the evidence that said hammer was furnished by the defendant to plaintiff and the other employee as aforesaid to use in said work," etc.

It is also said there "was no evidence that the hammer was furnished by the defendant for the purpose of driving a gad." Counsel for appellant is again in error. There was evidence that defendant's shift foreman had ordered the men to use whatever hammer they could get and that this hammer was the only one available heavy enough to do the work.

It is finally urged that this instruction assumes negligence on the part of defendant when the law requires it to be pleaded and proved. There is no merit in this objection. The instruction plainly authorized a verdict only in event the jury found that the act of defendant in furnishing the hammer was negligence.

 Counsel for appellant also criticizes the giving of instructions 2 and 7 for the reason that they refer the jury to the amended petition to ascertain what injuries plaintiff complains of. The instructions on the measure of damages should be read together, and when so read it plainly appears that the jurors were fully advised as to the injury for which plaintiff was entitled to recover damages and the elements they might consider in that connection. These instructions were six in number and read as follows:

### No. 2.

"The court further instructs the jury that if you find the issues in this case for the plaintiff, and further find that plaintiff was suffering from injuries sustained on occasions other than those complained of in the amended petition herein, you may award plaintiff compensation for such damages, if any, which you believe from the evidence directly resulted from the injury complained of in said amended petition."

### No. 5.

"The court instructs the jury that if you find the issues herein for plaintiff, then, in determining the amount of damages, if any, which you will award him, you may take into consideration the physical and mental pain and suffering endured by plaintiff, if any, since said injuries, if any, and in consequence thereof; the physical and mental pain and suffering, if any, which you find and believe from the evidence plaintiff is reasonably certain to suffer in the future as a result of said injuries, if any; the loss of earning, if any, as shown by the evidence, which plaintiff has lost as a result of said injuries, if any; his impaired earning capacity as shown by the evidence, if any shown; the character and extent of plaintiff's injuries, if any, and find for him in such sum as you may find and believe from the evidence will be a fair and reasonable compensation to plaintiff for the injuries, if any, sustained."

### No. 10.

"The court instructs the jury that although you may find and believe from the evidence that the plaintiff was injured by being struck on the leg by Armstead Leonard, a fellow servant, as described in the evidence; yet, if you shall further believe and find from the evidence that plaintiff was, prior to the time that he was hit with the hammer,

injured on the same leg, and after the time that he was struck with the hammer he was again injured by turning a kinked railroad rail over on and injuring his leg in the place he claimed to have been hit by the hammer, that the injury to his leg was caused partly as the result of the first injury to his leg above mentioned, and was caused partly as the result of the injury caused by turning the kinked rail over upon his leg, and was not the result of his being hit by the hammer, then you will find the issues in favor of the defendant.''

### No. 11.

''The court instructs the jury that although you may find and believe from the evidence that the plaintiff was injured by being struck on the leg by Armstead Leonard, a fellow servant, as described in the evidence; yet, if you shall further find that plaintiff was later injured by turning a kinked railroad rail over on and injuring his leg at the place he claimed to have been hit by the hammer; and if you shall further find that the injury to his leg was caused by the lick he received from turning the rail over onto his leg and ankle, and was not the result of his being hit by the hammer, then you will find the issues in favor of the defendant.''

### No. 12.

''The court instructs the jury that the burden of proof in this case is upon the plaintiff to prove that the defendant was negligent either in furnishing a defective hammer or in negligently using said hammer, and that said negligence actually caused the injury to plaintiff; and plaintiff must prove said facts by a preponderance or greater weight of the evidence, and unless plaintiff has so proved said facts your verdict should be for the defendant. And in this connection you are further instructed that by the terms, 'burden of proof' and 'preponderance of the evidence,' is not meant that plaintiff must prove the above-mentioned facts by a greater number of witnesses, but it does mean that in point of value and credibility the evidence on said facts for the plaintiff must outweigh that for the defendant.''

### No. 17.

''The court instructs the jury that if you find the issues for the plaintiff, then in estimating plaintiff's damages you are only permitted to take into consideration the actual damages sustained by plaintiff as a result of injuries received by plaintiff by being struck with a hammer, and in this connection you are further instructed that if you believe and find from the evidence that plaintiff was injured by being struck with a hammer and also injured some years ago, and also injured after being struck with a hammer by turning a rail over upon his leg, then, in computing plaintiff's damages, you

will exclude all injuries that plaintiff may have sustained by reason of the injury (if any) prior to being struck with a hammer, and also the injury (if any) suffered by plaintiff by reason of turning the rail over upon his leg."

We have held that it is improper to refer the jury to the pleadings for the issues to be determined (Jaffi v. Railroad, 205 Mo. 450, 472, 103 S. W. 1026; Sherwood v. Railway Co., 132 Mo. 339, 343, 33 S. W. 774; Britton v. City of St. Louis, 120 Mo. 437, 445, 25 S. W. 366), yet where, as here, the instructions read together require the jury to find the necessary facts the error of including mere references to the petition or answer is not prejudicial. [Hartpence v. Rogers, 143 Mo. 623, 633, 45 S. W. 650; State v. Scott, 109 Mo. 226, 231, 19 S. W. 89; Lackland v. Railroad, 101 Mo. App. 420, 428, 74 S. W. 505.] These assignments of error are ruled against appellant.

Counsel for appellant also claims that Instruction 5 is erroneous "for the reason that it does not confine the jury to determining the injuries suffered by plaintiff by reason of the lick of the hammer, but is a roving commission giving the jury the right to award him pay for injuries suffered since the injury, and allows them to compensate plaintiff for all injuries sustained and does not restrict the jury to the injuries inflicted by the hammer." It is also claimed that this instruction "conflicts with instructions given on behalf of the defendant, is ambiguous and its meaning is not clear." We have already set forth the instruction. Appellant does not indicate the instructions given for defendant with which it is supposed to be in conflict, but we have examined them all and do not find that it conflicts with any of them. Considering the instructions as a whole it does not appear that the jury could have been misled, especially in view of the specific instructions given for the defendant on the subject. [Buck v. Railroad, 108 Mo. 179, 18 S. W. 1090; Kiefer v. City of St. Joseph (Mo.), 243 S. W. 104, 109.]

It is also urged that Instruction 6 is erroneous because "it is a comment on the evidence, usurps the province of the jury and does not properly define the furnishing of the sledge hammer." This instruction is as follows:

"The court instructs the jury that if you find and believe from the evidence that it was reasonably necessary for plaintiff and Armstead Leonard to use a heavy hammer in striking the gad mentioned in the evidence, and that prior thereto defendant had instructed plaintiff to procure whatever hammer was readily accessible to plaintiff when required by him in the performance of his work for defendant, if so, and that at the time plaintiff was injured, if injured, the sledge hammer mentioned in the evidence was the only heavy hammer readily accessible to plaintiff at the time, then you may find that defendant furnished the sledge hammer aforesaid to plaintiff."

Whether the hammer was furnished by defendant or whether its use was due solely to plaintiff's choice was made an issue by the pleadings. Plaintiff was entitled to an instruction submitting this issue according to his theory. There was testimony tending to prove that the foreman had told the men to use any hammer they could find, that a heavy hammer or sledge was necessary to drive the gad ordinarily used in the performance of this work, and that the hammer that was used was the only one heavy enough for the work and available at that particular time and place. According to plaintiff's theory of this issue these facts constituted a furnishing of the hammer by defendant, and it was not an improper comment on the evidence, or an invasion of the province of the jury, to group such facts and submit them to the jury as determinative of this issue in plaintiff's favor if found to be true. [Knott v. Boiler Works, 299 Mo. 613, 253 S. W. 749; Tyler v. Hall, 106 Mo. 313, 323, 17 S. W. 319; Beattie v. Hill, 60 Mo. 72, 77; Fleisch v. Ins. Co., 58 Mo. App. 596, 607.]

Counsel for appellant insists that judgment for $7500 is excessive. Plaintiff testified that after receiving the injury from the hammer blow he continued to work until the 15th of June, 1926, although his leg was red and swollen and hurt him all the time. He said that defendant's doctor treated him and had him removed to a hospital where he underwent an operation on the 17th day of July, 1926, at which time a part of the bone was removed. He underwent another operation under a general anaesthetic about two months later. He was unable to do any work from the 15th day of June, 1926, until April or May, 1927, when he obtained employment from the city of Elvins at an average wage of about $40 a month, whereas he was earning $5 a day at the time he was injured. As to his condition at the time of the trial, early in 1928, he testified that his leg continued to hurt him and that "it breaks and runs about every ten days, sometimes three or four days at a time;" that there was always a soreness in his ankle and that when he walked it swelled some. A physician skilled in bone surgery testified that he examined plaintiff the first time on January 23, 1927, and found a deep red scar on his right leg just above the ankle and about five inches in length. There was some swelling of the leg in this region, some general tenderness of the leg, some loose bone substance in the lower part of the tibia, and the wound at the time was discharging some pus. He said that the condition of the bone had the appearance of osteomyelitis, that is, an inflamed condition involving the covering of the bone and the bone itself and the marrow of the bone. He said this condition often became chronic, getting worse and worse and extending over a long period of time. He stated that in his opinion in this case some of the bone substance was gone and that the bone should be cleaned out and filled with soft

tissue. He said he again examined plaintiff in August, 1927, but didn't find any great difference in the progress, though there might have been some improvement. He stated that in his opinion the blow from the hammer was the immediate cause of plaintiff's condition. He said that from the fact that improvements were taking place he didn't think plaintiff's condition would be permanent, but that complete recovery would require a great length of time, possibly a few years. Upon this showing we do not think the judgment for $7500 is excessive.

For the reasons above stated the judgment is affirmed. All concur.