ROBERT JAMES BUTTERFIELD, Defendant in Error, v. W. W. ENNIS, Plaintiff in Error.

Kansas City Court of Appeals, May 1, 1916.

1. **HUSBAND AND WIFE: Alienation of Affections.** Evidence reviewed and *held* to be amply sufficient to show that defendant, by gifts of money and presents, by artful words and blandishments and by promises of money and luxury, enticed plaintiff's wife away and alienated her affections from him, and that defendant did this knowing she was plaintiff's wife and intending to alienate her affections.

2. ————: ————: **Common-law Marriage.** Where there is an express, present mutual contract of marriage entered into by a man and woman, he promising her to be a good husband and she promising him to be a good and faithful wife, and the parties thereupon immediately enter into the marriage relation and live together and hold themselves out as husband and wife, a valid common-law marriage is created from which will arise all the rights that flow from marriage solemnized in the usual and proper form, and would, therefore, entitle one of the parties to maintain a suit for alienation the same as in the case of a statutory marriage.

3. ————: ————: ————: **Contracted in Another State: Presumption of Validity.** The contract of marriage is a contract *jure gentium* and consent and the assumption of the marriage status are all that is required by natural or public law. In the absence of local restrictions or regulations, parties, if otherwise capable, are entitled to contract marriage as of common right: Being thus recognized by the law of nations, if a contract of marriage made in another State is claimed to be illegal, the burden is upon the one who asserts the illegality.

4. **INSTRUCTIONS: Punitive Damages: Malice.** Punitive damages are not allowed in the absence of malice. But the enticing of another's wife is an act inherently wrong and necessarily known to be wrong, and if the alienation from the husband is intentionally done, the law implies malice.

5. ————: ————: ————: **Referring to Petition.** An instruction containing the words "as charged in plaintiff's petition" is not erroneous if the instruction contains all the facts necessary to entitle plaintiff to recover.

Error to Clay Circuit Court.—*Hon. Frank P. Divelbiss*, Judge.

AFFIRMED.

*R. T. Stephens, J. H. Hunter* and *C. W. Prince* for plaintiff in error.

*Craven & Moore* and *L. E. Bates* for defendant in error.

TRIMBLE, J.—This case is here on a writ of error to review a judgment obtained by Robert James Butterfield against W. W. Ennis for the alienation of his wife's affections. For convenience and to avoid confusion, the parties will be referred to as plaintiff and defendant respectively instead of defendant in error and plaintiff in error.

The petition alleged that the plaintiff and Flora Belle Butterfield were married in Leavenworth, Kansas, in February, 1913, and were living happily together as husband and wife in Excelsior Springs, Missouri, until the 15th day of September, 1913, when the defendant by gifts of money and presents, and his artful words and blandishments, and promises of money and luxury, enticed away plaintiff's wife and alienated her affections from him and induced her to go and live with defendant; all done with the full knowledge that she was plaintiff's wife and of her duty and obligations to him, and with an evil intent to deprive plain-

tiff of his marital rights and happiness and the love and affection of his said wife. It closed with a prayer for $10,000 actual and $10,000 punitive damages.

The answer was a general denial coupled with a specific allegation that Flora Belle Butterfield was not plaintiff's wife, they being divorced in Jackson county, Missouri, in November, 1912.

After a trial, the jury found for the plaintiff and assessed actual damages at $1000 and punitive damages at $750.

At some date, not shown, but presumably about the year 1900, plaintiff and Flora Belle Butterfield were married and thereafter had two children, a girl now fifteen and a boy now twelve. They were divorced in November, 1912, the girl being given to the mother and the boy to the father. They were never remarried under statutory forms, but plaintiff, in support of his cause of action, relied upon a common-law marriage said to have been entered into between them in Leavenworth, Kansas, on March 9, 1913. At that time she was living in Kansas City and he in Leavenworth. He testified that she came to see him and asked that he take her back as his wife, and that after some consideration and discussion of the matter, a mutual agreement was entered into between them to at once reenter the marriage relation, he promising her to be a good husband and she promising him to be a good and faithful wife; and that they thereupon resumed marital relations, and lived as husband and wife, holding themselves out to the world as 'such, and continuing to live happily together until September 15, 1913, when, according to plaintiff's contention, the defendant alienated his wife's affections.

Mrs. Butterfield, however, appeared as a witness for the defendant and, as the evidence showed her to have been divorced from plaintiff and the fact of the subsequent marriage was disputed, she was allowed to testify in defendant's behalf. She swore that no

agreement of marriage was entered into between her-
self and her former husband.  She admitted, however,
that she did go to Leavenworth to see her husband
at the time in question.  And the proof is that before
she went she told persons in Kansas City she was
going to get married, and after she returned she said
she was married.  She also admitted staying with
plaintiff in his room at Leavenworth.  Other witnesses
testified that shortly thereafter he came to her home
in Kansas City and occupied the same room and bed
with her.  Still others testified to their living together
as husband and wife in a cottage in Kansas City.

In April, 1913, the plaintiff went from Kansas
City to Excelsior Springs and obtained a position as
house detective or general utility man at the new
Snapp Hotel then about to open.  There is no question
but that Mrs. Butterfield went down to the Springs at
various times and was introduced as his wife, and
occupied a room at the hotel with him as such.  At
this time the home was in Kansas City and the chil-
dren were there.  When the hotel was ready for busi-
ness, plaintiff rented a cottage in Excelsior Springs
and moved his family into it and they lived there as
husband and wife until the separation.  Both of the
children testified, the boy for plaintiff and the girl
for defendant, but both of them say their father and
mother got along well until the defendant appeared
on the scene.  All the evidence of those who knew
them in Excelsior Springs is to the effect that they
lived together as husband and wife; that she was
introduced as his wife, and no one supposed anything
to the contrary until after the trouble arose over the
defendant.  Mrs. Butterfield admitted that she was
introduced as his wife and that she did not deny that
relation when so introduced.  She also admitted that
they lived together in the cottage as husband and wife.
She says, however, that whenever she was introduced

193 App. 41

by plaintiff as his wife she remonstrated with him in private for having done so! In fact, as we read the record, there was no thought on the part of anyone that plaintiff and Mrs. Butterfield were not regularly married in the usual and customary way until after defendant had come between them when Mrs. Butterfield claimed that she was a divorced woman, and for that reason was under no obligations to do as plaintiff wished. Defendant introduced evidence of witnesses who testified on direct examination that plaintiff admitted to them that he and Mrs. Butterfield were not married, but on cross-examination it developed that all the admission amounted to was that no ceremony had been performed but an agreement of marriage had been entered into. These so called admissions were while plaintiff was having trouble with Mrs. Butterfield over the defendant. So that, as we view the record, the only evidence contradictory of the fact that a valid common-law marriage was contracted in March, 1913, was the bare unsupported word of Mrs. Butterfield entirely at variance with all her acts and conduct prior to the time she is alleged to have been enticed by the defendant. And there was no evidence of conflict in reputation concerning the status of marriage claimed to exist at the time of the alleged alienation. We say this in answer to the claim of defendant that the court erred in refusing to give his instruction No. 3 in reference to a "presumption of marriage" and telling the jury that "if there is a conflict in the repute, it will not establish the marriage." There was nothing that tended in any way to cast doubt or suspicion upon the relations existing between plaintiff and his wife until after she had become alienated from him and then the only conflicting evidence arose from her in an endeavor to shield the one who is charged to have enticed her. Besides, plaintiff was not relying upon any presumption of marriage. The evidence offered in his behalf all

tended to establish an express, present, mutual contract of marriage entered into by the parties on March 9, 1913, and his instruction No. 1 required the jury to find that there was such a contract entered into and that the parties immediately entered into the marital relation and thereafter lived together and held themselves out as husband and wife. This was sufficient to create a valid common-law marriage, and to create all the rights that flow from marriages solemnized in the usual and proper form. [Topping v. Perry, 197 Mo. 531; Davis v. Stauffer, 132 Mo. App. 555.]

The defendant came to the Springs for the benefit of his health and was a guest at the Snapp Hotel. He desired a nurse but was unable to get one that suited him. At that time he was in a helpless condition. The opportunity for Mrs. Butterfield to assist in the support of the family thus presenting itself, she agreed to act as nurse for him. She was to get $10 a week, to take her meals at home, and go home at night. An arrangement was made with a minister and his wife to stay in the cottage and look after the children, while she was away.

At the time Mrs. Butterfield began nursing the defendant, he had two rooms at the hotel. Shortly thereafter he changed to a single room with a bath. He gave Mrs. Butterfield a gold watch which had formerly belonged to his dead son, a favorite child. He also gave her $25 and shortly thereafter Mrs. Butterfield went to Kansas City with money and outfitted herself with new clothing. Defendant began to improve, and from a downcast spirit changed to one of optimism. He was enabled to be up and around and went about the streets of Excelsior Springs and to the picture shows accompanied by Mrs. Butterfield. He talked much of her to others and referred to her in rather endearing terms, and would pat her affectionately in the presence of others.

Mrs. Butterfield did not come home to her meals, but secretly ate her meals with defendant in his apartment, using the same eating utensils sent up by the hotel as one order. She became indifferent toward her husband, and he began to investigate. When he discovered what was going on he went to the defendant and remonstrated with him and demanded that the wife cease acting as nurse and that the defendant discharge her from his service. This the defendant refused to do, and from this time on the wife did not return to her home but stayed with defendant until the hotel management forced them to leave the hotel. Rather than give up his nurse the defendant went to another hotel taking her with him. He made certain trips to Oklahoma and Iowa where he had relatives. On these occasions Mrs. Butterfield never went to where they lived, but did accompany him to Kansas City where they stopped at a hotel, and where, upon his return, she met him and accompanied him back to the Springs. There was direct evidence of their being discovered and surprised in compromising attitudes. In fine, there was ample evidence to establish the charge that her affections were alienated.

It is claimed that the court erred in refusing to give defendant's instruction No. 2 which referred to plaintiff's alleged denials of his marriage and to his statements that he was married, telling the jury that the former were entitled to great weight and the latter to little weight. This was a comment upon the evidence and was properly refused. [Zander v. St. Louis Transit Co., 206 Mo. 445; Brown v. Quincy Omaha etc. R. Co., 127 Mo. App. 614.]

If the objection that there was no legal evidence of a marriage is based on the contention that the facts recited do not tend to establish a valid common-law marriage, then the point is wholly without merit, as is also the contention that there is a variance between

the pleading and proof. A valid common-law marriage would entitle one of the parties thereto to maintain a suit for alienation the same as in the case of a statutory marriage. The contention, however, seems to be based rather upon the claim that since the contract of marriage was made in Kansas and there is no proof that the common law was in force in that State, the case should fail for want of proof because there is no presumption of the validity of such contract. There was no proof that such a contract was illegal in Kansas, nor was any law of Kansas pleaded or proved by either party. It is held in actions of negligence that where a person is injured in another State and brings suit in this State and no law of the former is anywhere pleaded, the law of the latter will be applied (Lyons v. Metropolitan St. Ry. Co., 253 Mo. 143, l. c. 151), and this we understand to be the rule in regard to suits based upon a status growing out of a contract. But, aside from this, and whether this be true or not, "the contract of marriage is a contract *jure gentium,* and consent and the assumption of the marriage status are all that is required by natural or public law. In the absence of local restrictions or regulations these parties were capable of contracting marriage as of common right. Restrictions or conditions upon the right to contract marriage are exceptional, and if the evidence establishes a contract of marriage *per verba de praesenti,* and it is claimed that it falls within such condition or restriction, the burden is on the party so claiming to show it." [Laurence v. Laurence, 164 Ill. 367, l. c. 372. See, also, In re estate of Richards, 133 Cal. 524; People v. Loomis, 106 Mich. 250.] The contract of marriage being one of natural right and recognized by the law of nations, the contract proven in this case will be held valid here in the absence of any showing by defendant that it was invalid where made.

Defendant claims that he did not know Mrs. Butterfield was plaintiff's wife but thought she was divorced, as she told him she was. He, therefore, contends that plaintiff's instructions are erroneous because they did not include a clause requiring the jury to find that he knew she was married to plaintiff. But although defendant testified that he did not know she was plaintiff's wife, yet he admitted that she was introduced to him as Mrs. Butterfield; that within two or three weeks after she began nursing him plaintiff told him she was his wife. And although plaintiff protested to him against the way matters were going and insisted upon the defendant ceasing his enticing conduct towards his wife, yet, nevertheless, defendant refused to do so, and not only persisted in his conduct and kept Mrs. Butterfield at his side, but left the hotel and went elsewhere rather than sever his relations with her, and admitted at the trial that she was still with him. In view of these admissions and conceded facts, it would seem there was no issue raised as to his knowledge of the woman being plaintiff's wife. And this seems to have been the view of defendant at the trial, for in an instruction, given at his request, telling the jury what they were required to find before they could find for plaintiff, the fact of defendant's knowledge that she was plaintiff's wife was not specifically mentioned, except as it may be included in the words "wrongfully and intentially enticed her away from plaintiff." But, however this may be, we think plaintiff's instructions did, in effect, require the jury to find that defendant knew he was depriving plaintiff of his wife before they could find a verdict for plaintiff. All of them, bearing in any way upon the constitutive elements of the cause of action, required the jury to find that defendant "*intentionally* prejudiced plaintiff's wife and caused her to leave him;" that defendant "*intentionally* per-

suaded or induced plaintiff's wife to separate from him and sever the relation of husband and wife or remain apart from him;" and that defendant "was *intentionally* guilty of such conduct as was calculated to prejudice plaintiff's wife against him and to alienate her from him, and to induce her to leave him and to remain apart from him, and that such effect was intended by the defendant to be produced and was actually produced by his conduct." For this reason we are of the opinion that many of the objections raised by defendant to the instructions are without force.

Plaintiff's instruction No. 2 on the measure of damages was unexceptionable. It was conditioned upon the contingency that the finding was for plaintiff. It did not have to restate all the elements of plaintiff's cause of action. It was expressly approved in Modisett v. McPike, 74 Mo. 636, l. c. 641; Hartpence v. Rodgers, 143 Mo. 628, l. c. 635. It is true punitive damages are not allowed in the absence of malice. But the enticing away of another man's wife is an act inherently wrong and necessarily known to be wrong, and if the alienation from the husband is intentionally done, the law implies malice from these facts.

There was no error in plaintiff's instruction No. 3. It did not tell the jury that they could not consider unhappy or inharmonious relations, if any, existing between plaintiff and Mrs. Butterfield, but only that they did not constitute a defense unless the jury believed from the evidence that she left him for those causes and not on account of defendant's conduct, if any.

Instruction No. 4 was not erroneous even if it did contain the words "as charged in plaintiff's petition." Because the instruction contained "all the facts necessary to entitle plaintiff to recover." [Hartpence v.

Rodgers, 143 Mo. 623, l. c. 633; State v. Scott, 109 Mo. 226.]

If there was error in the introduction of plaintiff's petition for divorce filed November 10, 1913, the record shows no objection made to it and therefore it cannot avail here.

Numerous other objections are made but they are without merit.   Much is said in the brief as to the improbability of the defendant having enticed away the plaintiff's wife, but obviously this was for the jury to pass on and was settled by their verdict.   As we have seen, the evidence was ample to authorize the jury to find every element going to make plaintiff's case.   And the judgment should be, and is, affirmed. The other judges concur.